517 So.2d 749 (1987)
Michael RATUSHINAK, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-3039.
District Court of Appeal of Florida, Fourth District.
December 30, 1987.
*750 Richard L. Jorandby, Public Defender, and Jeffrey L. Anderson, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Eddie J. Bell, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a judgment of conviction and a sentence for armed sexual battery, armed burglary and armed trespass. We affirm the convictions but remand for resentencing in accordance herewith.
On February 28, 1986, appellant Michael Ray Ratushinak was charged by information with one count of armed sexual battery in violation of section 794.011(3), Florida Statutes, and with two counts of armed burglary in violation of section 810.02(2), Florida Statutes. On September 26, 1986, the State filed a notice advising appellant of its intention to introduce testimony regarding appellant's arrest on February 4, 1986 for an unrelated crime and his subsequent release from jail on February 7, 1986. Said testimony was alleged to be relevant to the issue of appellant's identity as appellant had "made statements both to the victim and the arresting officers pertaining to his recent release from jail while he was committing the sex and while he *751 was being arrested." On October 16, 1986, appellant filed a motion to preclude the State's proposed use of evidence of other crimes.
On October 23, 1986, the State filed an amended information in open court charging appellant with the same offenses with which he had been charged by the original information. After trial, the jury returned a verdict finding appellant guilty of sexual battery, armed burglary and trespass of a conveyance while armed (a lesser included offense of armed burglary). The court entered a judgment adjudicating appellant guilty in accordance with the jury's verdict. Appellant was sentenced on November 17, 1986, for a term of "years not exceeding life imprisonment" as to the armed sexual battery and armed burglary convictions. As to the armed trespass conviction, appellant was sentenced to five years in prison.
Appellant filed a timely notice of appeal on December 11, 1986.
On the evening before the commission of the offenses herein, the victim got off from work at approximately midnight and rode her bicycle home. After watching television and having a glass of wine, she went to sleep. Sometime between 5:30 and 6:00 in the morning, she awakened suddenly and discovered a man (whom she later identified in court as the appellant) in her bed. From the light coming through the bedroom window, she was able to make out specific details of the man's face. At trial, she testified that the man's forehead, nose and cheeks were noticeable to her; that the man's forehead had some kind of mark or blemish on it; that his nose was "bobbly" and his forehead was very high; that she was unable to see any other part of the man's body because he pushed her face down in the bed; that the man placed one of his arms tightly around her neck and with the other arm he held a knife on her; that the man "smelled really bad" (describing the smell as sweat with "so much liquor that it smells of whiskey or liquor or beer"); that the man pulled her pants down and "performed the sexual act"; that during the assault, the assailant allegedly rambled about all kinds of things, including that "he was on the run" and that he "had escaped from jail"; and that after having sexual intercourse with her, the assailant left her home.
Jose Diaz, a police officer for the City of Fort Lauderdale, responded to the victim's call. He testified that she described her assailant as a "white male who she believed was approximately five foot six, 140 lbs. Brownish, wavy, hair, having an extremely bad odor about him and a scar or some blood on his forehead"; and that the victim described the knife as a common steak knife with a wooden handle and a serrated blade. Officer Diaz then issued a BOLO. Shortly thereafter, he received a call about a possible burglary of a vehicle with a burglar still in the vehicle. Since the burglary was occurring only a block away, the police officer ran to the location. When he arrived at the scene of the burglary, he observed a "white male, [with] brown wavy hair, full beard, wearing jeans and a blue T-shirt laying across the front seat with his head on the passenger side and his feet on the driver's side of the vehicle ... He was asleep. His right arm was laying over the seat towards the floorboard and laying on the floorboard was a wooden steak knife, approximately four inches from his hand." Officer Diaz opened the vehicle door and detected a very strong odor which he described as "dirty and possibly with some alcohol." After getting the man out of the car, Officer Diaz noticed that the man had a scar and possibly some blood on his forehead. At this point, Officer Diaz realized that the man removed from the car fit the victim's description of her assailant, so he had the victim brought by police vehicle. Upon arrival at the scene of the burglary, the victim was asked to identify the suspect. Although she could not positively identify him as her assailant, she stated that she believed he looked like the culprit. After being handcuffed and prior to being taken to the police station, the suspect advised Officer Diaz that he had just been released from jail.
Jan Blackburn, the Fort Lauderdale police officer assigned to investigate sex crimes, spoke with appellant shortly after *752 his arrest. At trial, Officer Blackburn testified that when she spoke with appellant he "had a strong odor of alcoholic beverage on his breath as well as about his person ... his clothing". Furthermore, Officer Blackburn testified that appellant indicated "that he had just gotten out of the Broward County Jail the night before." This fact was confirmed through the sheriff's department.
Appellant contends that the trial court erred in allowing the appellee to introduce evidence that appellant had just been released from jail when he committed the crimes involved in the instant case. According to appellant, the admission of this evidence was reversible error as it was introduced solely to show appellant's bad character and propensity to commit crimes. In support of his position, appellant relies on Adan v. State, 453 So.2d 1195 (Fla. 3d DCA 1984).
Adan involved an appeal from a judgment and conviction of second-degree murder. During the trial, the court refused to grant a mistrial after a state witness testified that "the defendant was in custody for an unrelated charge of burglary when he was questioned by an officer concerning the murder." 453 So.2d at 1196-7. The Third District Court of Appeal found that the admission of this evidence was error as the subject testimony was not relevant to any issue of material fact concerning the murder. However, this error was deemed harmless error in light of the fact that the record contained a statement by defendant regarding his involvement in the murder and that the circumstances of the physical evidence were consistent with the defendant's statement.
As noted by appellee, the instant case is distinguishable from the Adan case in that the testimony admitted herein may be deemed relevant to an issue of material fact  the identity of the assailant. Given the fact that the sexual battery took place during an early morning hour when the lighting conditions were less than ideal for a proper viewing of the assailant, the statements made by the assailant became critically important for the purposes of later identifying that individual. The victim testified that during the sexual assault, appellant had stated to her that "he was on the run" and that "he had escaped from jail." The police officer who investigated both the armed sexual battery and the armed burglary incidents testified that upon being handcuffed, the appellant stated that "he had just been released from jail." According to appellee, the testimony of the officer who testified that appellant was released from the Broward County jail on February 7, 1986, at 6:06 p.m., was relevant to identify appellant as the assailant since the assailant had made statements to both the victim and police regarding his recent incarceration. We conclude that unlike the Adan case, this testimony regarding appellant's being in custody for an unrelated crime was relevant to the issue of identity  a material fact  and therefore should be properly deemed admissible. See Henderson v. State, 304 So.2d 537 (Fla. 3rd DCA 1974), and Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980).
The appellant's second point on appeal is that the trial court erred in sentencing appellant. Appellant contends that the trial court's error was twofold  (1) that sentencing appellant to a term of "years not exceeding life imprisonment" constituted an indefinite sentence which after October 1, 1983, is improper; and (2) that sentencing appellant without a properly prepared scoresheet was reversible error.
As to appellant's contention that he was improperly sentenced to an indefinite term, it is clear from the record that the court sentenced him to a life sentence. The supplemental record contains the following
THE COURT: He's already been printed. He's already been adjudicated.
At this point the court finds that his point score under the guidelines is 704 and therefore he comes under the mandatory life sentence which is 583. So at this time he will be sentenced to be incarcerated for a term of years not exceeding life imprisonment. (emphasis added).
Thus, even though the sentencing order contains the language "term of years," it is *753 evident from the supplemental record that the court imposed a life sentence and not a sentence of indefinite duration.
Appellant's contention that the trial judge committed reversible error in sentencing him in the absence of a properly completed guidelines worksheet has merit. This court has stated in Huhn v. State, 511 So.2d 583 (Fla. 4th DCA 1987), that resentencing is required where sentencing is done without a prepared guidelines worksheet being available. It is evident from the record that the scoresheet had not been properly prepared at the time of sentencing. The scoresheet was prepared after the court announced its decision to sentence appellant to life in prison. In fact, the court made a calculation of 704 points at the sentencing hearing but the later completed scoresheet reflects a point count of 630. Although Huhn and the cases cited therein dealt with the need for prepared guidelines scoresheets in departure situations, we conclude that the same rule should be applied to the instant case. The record discloses that at the time of sentencing there was some confusion as to the actual number of prior offenses the court was taking into account in sentencing appellant. Florida Rule of Criminal Procedure 3.701 d.1. provides
One guideline scoresheet shall be utilized for each defendant covering all offenses pending before the court for sentencing. The state attorney's office will prepare the scoresheets and present them to defense counsel for review as to accuracy in all cases unless the judge directs otherwise. The sentencing judge shall approve all scoresheets.
It does not appear that the procedure set forth in this rule was followed in the instant case. It is evident from the record and the parties' briefs that the state attorney's office did not prepare the scoresheet and present it to appellant's counsel for review as to accuracy as required by the rule prior to sentencing. Although the judge requested counsel for the parties to meet and review the scoresheet after sentencing, we hold the rule was intended to assure the accuracy of the scoresheet before a sentence is imposed. On the authority of Huhn, we remand for resentencing.
ANSTEAD and GUNTHER, JJ., concur.