SCHWARTZ, Chief Judge.
Clausell appeals from his convictions after a jury trial of various crimes involved in the armed robbery of a jewelry salesman, Guillermo Gutierrez, which occurred at his apartment in Miami on January 30, 1987. For the most part we affirm, but we remand for a hearing on the limited issue of an alleged improper contact between the jury and the bailiff.
I
Of the substantive contentions raised by Clausell, we find that none have merit and only one — which claims that a yellow jacket worn by the defendant’s accomplice was the subject of an improper search and seizure from Clausell’s apartment and therefore was wrongly admitted into evidence— justifies discussion. The question arose in the following manner: The victim Gutierrez sold merchandise consigned to him by an establishment known as Mr. Money. Within a month prior to the offense, he had met and spoken to Clausell, who worked as a security guard at the store. At the time of the incident, Gutierrez answered a knock on his apartment door when he was met by two men. He unequivocally identified Clausell as one of them both shortly thereafter from a photo lineup and later at the trial. He also recalled that the other man, whom he did not know, was wearing a yellow jacket or windbreaker during the crime. According to the victim, Clausell demanded his jewelry case; the robbers took it and left the premises after gagging Gutierrez and tying his hands behind his back. About a week later on February 7, 1987, Clausell was arrested by Detective Alvarez of the Miami Police Department. Before taking the defendant to the station that same day, and with Clausell’s written consent — conditioned only by the requirement that he be present during the search — Alvarez and Clausell went to his apartment, which he shared with another individual, and searched his room. A yellow windbreaker was hanging in the closet. Alvarez, who was not the primary investigator on the case, looked carefully at the *890 jacket, searched its pockets, and then simply left it on Clausell’s bed.
After a few days, on Friday, February 11,1987, while discussing the case with the lead detective who had returned from vacation, Alvarez first realized that the jacket was of some evidentiary significance. Without a warrant, he went back to the apartment to secure it. He was met by a person identified only as “an old man” who said he had been permitted to use the apartment by Clausell’s roommate and who let Alvarez into the apartment and the defendant’s personal room. The jacket was still just where he had left it on the bed four days before. Alvarez took it with him. After a motion to suppress was denied, Gutierrez positively identified it at the trial as the one worn by the accomplice. Clausell now complains of the rulings denying suppression and admitting the jacket into evidence.
Without the necessity of directly so holding, we may assume, on the grounds that (a) Clausell’s specific consent to the initial entry did not extend to the second one made in violation of the condition of his presence, see Michigan v. Clifford, 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984); Leonard v. State, 481 So.2d 614 (Fla. 4th DCA 1983), and (b) the “old man” had no authority to consent to the search of Clausell’s room, see Riley v. Gray, 674 F.2d 522 (6th Cir.1982), cert. denied, 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982); 3 W. LaFave § 8.5(e) (2d Ed. 1987), that the February 11 entry and seizure were constitutionally impermissible. Nevertheless, we affirm. We do so upon the holding that the refusal to suppress the jacket was — as is required to sustain such a conclusion when constitutional error is allegedly involved — harmless beyond a reasonable doubt. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); State v. DiGuilio, 491 So.2d 1129 (Fla.1986). We reach this conclusion, which necessarily reflects the determination that there is no reasonable possibility that the assumedly erroneous admission of this evidence affected the jury verdict, DiGuilio, 491 So.2d at 1139, upon two grounds.
(a) In the first place, the quantity and quality of the evidence against Clausell— primarily including his positive identification by a victim who had become acquainted with him in a situation in which the defendant obviously gained the information necessary to commit the crime— was no less than overwhelming. See Jones v. State, 332 So.2d 615, 619 (Fla.1976); Pericola v. State, 499 So.2d 864 (Fla. 1st DCA 1986), review denied, 509 So.2d 1118 (Fla.1987); Whitfield v. State, 479 So.2d 208 (Fla. 4th DCA 1985); Hall v. State, 444 So.2d 1019 (Fla. 3d DCA 1984). On the other hand, Clausell’s sole defense was an alibi which, while elaborately constructed, was clearly revealed at the trial to be entirely spurious.[1] In these circumstances, it is impossible to believe that even the outright exclusion of all evidence concerning the jacket — which we hold infra was not appropriate — would, could, or might have yielded a different verdict. Domberg v. State, 518 So.2d 1360, 1362 (Fla. 1st DCA 1988), review denied, 529 So.2d 693 (Fla.1988); Pericola v. State, 499 So.2d at 868; DiGuilio, 491 So.2d at 1129; Whitfield v. State, 479 So.2d at 218; see Grossman v. State, 525 So.2d 833 (Fla.1988), cert. denied, — U.S. —, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Hence, no reversible harm came to the defendant as a result of the trial court’s ruling on this issue.
(b) Second, narrowly but appropriately focusing our attention not on the general subject matter of the jacket but upon the particular ruling admitting it into evidence, we conclude that the alleged error was constitutionally harmless for another reason; that is, that the jacket itself was no more than cumulative of other properly received evidence of its nature, description, and location. Our analysis on this point begins with the undeniable proposition that even a constitutionally improper search *891 does not “revert back” so as to taint the product of an earlier, properly undertaken police action. State v. Eicher, 431 So.2d 1009 (Fla. 3d DCA 1982); State v. Tillman, 402 So.2d 19 (Fla. 3d DCA 1981). Thus, the second search and seizure had nothing to do with the admitted propriety of the first consent search in which the police saw and carefully examined the jacket, and most important of all, noted its location in the defendant’s closet.[2] Armed with this properly secured information, the prosecution and police could properly have minutely described the jacket and the place it was found,[3] drawn a color picture of it or even purchased one exactly like it a nearby store[4] — all of which would have been entirely appropriate and any of which, when heard or seen respectively by the victim, would have had the identical evidentiary result and effect: that a yellow jacket just like one worn by a participant in the crime had been found in the defendant’s apartment. It is well settled that even incorrectly admitted evidence is deemed harmless and may not cause reversal when it is essentially the same as or merely corroborative of other properly considered testimony. See generally applies here. See People v. Myrick, 638 P.2d 34 (Colo.1981) (admission of improperly seized television sets cumulative and harmless when photograph of sets properly in evidence); 4 W. LaFave, Search and Seizure § 11.7(e), at 535-37 (collecting cases that “improper admission of evidence seized in violation of the Fourth Amendment was harmless”). Hence, for this reason as well, the physical admission of the jacket itself does not justify reversal.
II
We do find error in the trial court’s denial without an evidentiary hearing of a claim that there was an improper contact between the bailiff and at least one of the jurors. See Brown v. State, 538 So.2d 833 (Fla.1989). The cause is remanded solely for a determination of this limited issue. See Sconyers v. State, 513 So.2d 1113 (Fla. 2d DCA 1987).
Affirmed in part, reversed in part, and remanded.[5]

. It is not insignificant that the jury returned its guilty verdict after only fifteen minutes of deliberation.

.Although we are not sure that this kind of approach has been taken before, it may well be that the "inevitable discovery" rule, Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); Craig v. State, 510 So.2d 857 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); State v. Griffith, 500 So.2d 240 (Fla. 3d DCA 1986), review denied, 509 So.2d 1117 (Fla.1987), applies in reverse. In other words, it is more than inevitable under the rule that the significant aspects of the evidence in question eventually would be found, since they actually had already been discovered when the Fourth Amendment violation allegedly took place.

. As they actually did at trial.

. The jacket appears to be an ordinary item readily available for sale.

. In a pleading in the nature of a writ of error coram nobis, Clausell also attempts to raise other issues concerning alleged jury misconduct. We do not pass upon and express no opinion whatever concerning the merits of these claims. See Richardson v. State, 546 So.2d 1037 (Fla.1989). The defendant may file a Rule 3.850 motion in the trial court concerning these issues. See Richardson, 546 So.2d at 1038.