565 So.2d 328 (1990)
Daniel Ray ERICKSON, a/K/a John William Dickey, Appellant,
v.
STATE of Florida, Appellee.
No. 88-0242.
District Court of Appeal of Florida, Fourth District.
June 13, 1990.
Rehearing Denied August 8, 1990.
*330 Richard L. Jorandby, Public Defender, and Marcy K. Allen, Asst. Public Defender, West Palm Beach, for appellant.
Daniel Ray Erickson, Florida City, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
ESQUIROZ, MARGARITA, Associate Judge.
Following a non-jury trial, the defendant was convicted of indecent assault on a child under sixteen, pursuant to section 800.04(1), Florida Statutes (1987), and sentenced to fifteen years in the state penitentiary. He raises several points on appeal, challenging both his conviction and sentence. We affirm the conviction, but vacate the sentence and remand for resentencing.

ADMISSION OF PSYCHIATRIC TESTIMONY
The defendant claims that the trial court erred in admitting, over his objections, irrelevant and prejudicial expert psychiatric testimony in the state's case in chief. Dr. Mandri, a psychiatrist who examined the defendant on the day following his arrest, testified that his diagnosis of the defendant's condition was pedophilia and antisocial behavior, and that it was his belief that the defendant was not truthful during the psychiatric interview. Dr. Perfilio, who examined the defendant several months later solely to determine the defendant's competency to stand trial, disclosed certain factual admissions concerning the events of the crime made by the defendant in the course of the psychiatric interview. Dr. Perfilio also testified that the defendant told him that he had long had sexual *331 fantasies about female children, including oral, anal, and vaginal fantasies.[1]
The state argues that such testimony is relevant and therefore admissible in the state's case in chief to establish criminal intent by rebutting the defendant's claim that he only playfully touched the ten-year-old victim, and to establish the defendant's capacity to understand and voluntarily waive his Miranda rights as a predicate for the admission of his statement to a police detective.[2] In response, the defendant asserts that he has not contested the voluntariness of his statement to the detective, and that he never raised insanity as a defense or otherwise placed his mental condition in issue throughout the trial.
We agree with the defendant's position and hold that the trial court erred in admitting such expert testimony. In Francis v. State, 512 So.2d 280 (Fla. 2d DCA 1987), the defendant appealed his conviction and sentence for capital sexual battery and battery upon his three female nieces, ages eleven and younger. The district court of appeal held that the trial judge erred in permitting a child psychologist, called as an expert by the state, to render his opinion that the defendant had a personality characteristic of being attracted to children. In so ruling, the court cited the familiar principle that evidence of a person's character or a trait of character is inadmissible to prove that he acted in conformity with it on a particular occasion, except when such evidence is offered by the accused, or by the prosecution to rebut the trait. § 90.404(1)(a), Fla. Stat. (1987); Francis v. State, 512 So.2d at 282.
Even relevant evidence is inadmissible if its sole purpose is to show the defendant's bad character or propensity to commit the crime charged. Coler v. State, 418 So.2d 238, 239 (Fla. 1982), cert. denied, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983); Harris v. State, 183 So.2d 291 (Fla. 2d DCA 1966).[3] It is also well established that expert testimony may not be offered to vouch for the credibility of a witness. Tingle v. State, 536 So.2d 202, 205 (Fla. 1988); Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986), dismissed, 507 So.2d 588 (1987). It logically follows that expert testimony should not be allowed in a criminal trial to attack the credibility of the accused, who has a right not to become a witness in the first place.
Additionally, a court-appointed psychiatrist may testify as to his opinions or conclusions regarding the defendant's mental condition where such mental condition is in issue. But he may not disclose incriminating statements made to him by the defendant, or directly divulge facts about the crime that he may have elicited from the defendant in the course of the examination, unless the defendant first opens the door to such inquiry by his own presentation of evidence. See Parkin v. State, 238 So.2d 817, 820-22 (Fla. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); McMunn v. State, 264 So.2d 868, 870 (Fla. 1st DCA 1972). See also Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); Fla.R. Crim. P. 3.211(e). Thus, the defendant's Fifth Amendment rights are violated where the state is allowed to use the substance of his unwarned disclosures or statements made during a pretrial psychiatric examination as affirmative evidence against him at trial. Estelle v. Smith, 101 S.Ct. at 1874-75.[4]
*332 In the present case, the defendant did not introduce any psychiatric evidence, nor did he ever indicate that he might do so. He did not place his mental condition in issue at trial,[5] nor did he challenge the knowing and voluntary nature of his statement, which was admitted at trial virtually without objection through the interrogating detective's testimony. Therefore, because the challenged psychiatric testimony was not truly relevant to any issue at trial, the trial court erred in admitting it.

ADMISSION OF TESTIMONY CONCERNING OTHER CRIMES
The defendant also claims that the trial court erroneously admitted evidence of collateral crimes through the testimony of one Mr. Conicelli and his nine-year-old daughter, who revealed their observations of acts committed by the defendant on another little girl named Sarah at the Parents Without Partners picnic, where it is claimed that the acts committed on the ten-year-old victim herein occurred. In particular, Mr. Conicelli explained that while in the water, the defendant lifted Sarah, held her with his hand touching her private parts for about one or two minutes, and then threw her up in the air and into the water. The defendant argues that such testimony is inadmissible because (a) the state did not provide him with a notice of intent to offer evidence of other criminal offenses as required by section 90.404(2)(b), Florida Statutes (1987), and (b) such testimony lacks relevancy because the acts committed on Sarah are dissimilar to the acts claimed to have been committed on the victim, thereby serving only to show bad character and propensity to commit the crime charged. The state takes issue with the defendant's characterization of the evidence, asserting that it is admissible as inseparable crime evidence under Tumulty v. State, 489 So.2d 150 (Fla. 4th DCA), rev. denied, 496 So.2d 144 (Fla. 1986), and other cases following the same logic.
We agree with the state's position. Both Sarah and the victim were allegedly assaulted in the course of the day's activities at the Parents Without Partners beach picnic they both attended. The manner in which the defendant touched young Sarah in her private parts by lifting her up in the water, holding her, and then throwing her, as described by Mr. Conicelli, is remarkably similar to the way in which the defendant allegedly lifted the ten-year-old victim while in the water, holding her with his hand on her buttocks area, as she described it. Additionally, the testimony of Mr. Conicelli and his nine-year-old daughter is somewhat cumulative to a portion of the account given by the victim, who at one point disclosed, without objection, that she later returned to the water accompanied by the defendant, by Sarah and another girl, who "wanted to be picked up and they were diving off. They were just jumping off." Indeed, the incident with Sarah led directly *333 to the defendant's apprehension at the scene, for immediately after observing the defendant touch Sarah, the Conicellis alerted Sarah's mother, who in turn summoned another member in charge of the group, who in turn confronted, chased, and apprehended the defendant a short distance away.
Accordingly, we hold that the testimony concerning the defendant's touching of Sarah's private parts is admissible because that act is inseparably linked in time and circumstances to the evidence of defendant's acts upon the ten-year-old victim herein. Such testimony is simply relevant evidence which is "inextricably intertwined" in the scenario of the crime charged, it all having occurred in the course of the beach day at the Parents Without Partners picnic. See Kelly v. State, 552 So.2d 1140, 1141-42 (Fla. 5th DCA 1989); Tumulty v. State, 489 So.2d at 153. See also Austin v. State, 500 So.2d 262 (Fla. 1st DCA 1986), rev. denied, 508 So.2d 13 (Fla. 1987). This court has held that the characteristics of inseparable crime evidence are distinct from those of collateral crime evidence, and such evidence is admissible for different reasons and under a different section of the Evidence Code, section 90.402, Florida Statutes (1987). Therefore, the state need not comply with the ten-day notice provision of section 90.404(2)(b) as a prerequisite to offering inseparable crime evidence. Platt v. State, 551 So.2d 1277 (Fla. 4th DCA 1989); Tumulty v. State, 489 So.2d at 153. The trial court did not err in admitting such testimony.

ADMISSION OF DEFENDANT'S STATEMENT TO THE VICTIM
The defendant challenges the trial court's admission of a statement claimed to have been made by him to the victim some six hours after the actual conduct charged  fondling the victim's buttocks  allegedly occurred, on the basis that such statement injects into the trial evidence of criminal conduct not charged in the information. As disclosed by the victim, the defendant uttered the statement when he invited her to go in the water later again that afternoon, telling her "[D]o you want to do like couples do in the water," and "[I]t won't hurt and don't tell your father." The victim interpreted the remark as an invitation to "make love."
We reject the defendant's argument and hold that the trial court properly admitted the defendant's statement as an admission from which guilt for the crime charged could be inferred, pursuant to section 90.803(18), Florida Statutes (1987), or as relevant to show the defendant's state of mind under section 90.803(3)(a), Florida Statutes (1987). Jackson v. State, 530 So.2d 269, 272 (Fla. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989); Pieczynski v. State, 516 So.2d 1048, 1051 (Fla. 3d DCA 1987). As defined by the charge in the information,[6] the state was required to prove that the defendant fondled the victim's buttocks with a lewd and lascivious intent, in violation of section 800.04(1), Florida Statutes (1987). See Egal v. State, 469 So.2d 196, 198-99 (Fla. 2d DCA), rev. denied, 476 So.2d 673 (Fla. 1985). Indeed, the theory of defense, stressed repeatedly in opening and closing arguments and during cross examination of the state's witnesses, was that while the defendant did touch the victim's buttocks in the water, he did so playfully and innocently while helping her dodge waves.
In determining if the statement is admissible, it is irrelevant that the statement may have been uttered some six hours following the actual conduct charged rather than contemporaneously with it, for an admission from which guilt may be inferred is not rendered inadmissible because of the fact that it is made after the commission of the charged offense. See Swafford v. State, 533 So.2d 270 (Fla. 1988), cert. *334 denied, ___ U.S. ___, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989); Darty v. State, 161 So.2d 864, 870 (Fla. 2d DCA), cert. denied, 168 So.2d 147 (Fla. 1964). According to the victim, the defendant made the statement at the picnic itself  on the very same day and at the same location as the actual conduct charged took place. The statement was part and parcel of the crime charged and it was clearly admissible. The trial court was correct in so ruling.

ISSUES RAISED IN SUPPLEMENTAL BRIEF
The defendant has filed a pro se supplemental brief raising additional points on appeal. One of the issues he raises is the alleged denial of his Sixth Amendment right to the effective assistance of counsel. This issue, however, cannot be sufficiently determined by us from the record as it now stands. Generally, such claims are not reviewable on direct appeal, but are more properly raised by motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); Cumper v. State, 506 So.2d 89 (Fla. 2d DCA 1987); Fletcher v. State, 506 So.2d 90 (Fla. 2d DCA 1987).
The defendant also challenges the use of his in-court identification by the victim at trial, claiming that it is tainted by an impermissibly suggestive pre-trial photographic-identification procedure. He has, however, failed to properly preserve this issue for appellate review. It is true that his attorney did file, on the day of trial, a motion to suppress the identification evidence as unnecessarily suggestive.[7] Indeed the trial transcript shows that the prosecutor and defense counsel stipulated on the record that the trial judge could hear and determine the motion to suppress during trial. But the transcript also shows that at trial the defendant failed to present any evidence, through cross examination or otherwise, relevant to the challenge.
It is elementary that when the court hears a motion to suppress evidence on its merits, the defendant is required to present evidence supporting his position, and the state may then offer rebuttal evidence. Fla.R.Crim. P. 3.190(h)(3); State v. Hinton, 305 So.2d 804 (Fla. 4th DCA 1975). Additionally, it is the appellant's burden to establish error on appeal by furnishing a sufficient record of trial proceeding substantiating such error. See, e.g., State v. Anderson, 329 So.2d 424 (Fla. 3d DCA 1976). Moreover, the defendant did not object on any ground when the victim identified the defendant in court. Therefore, in the absence of an objection to the admissibility of such identification testimony at trial, the issue is not preserved for appellate review. Malloy v. State, 382 So.2d 1190, 1192 (Fla. 1979); Snead v. State, 415 So.2d 887, 890 (Fla. 5th DCA 1982).
We have examined the other points raised in the defendant's supplemental brief. Except for the sentencing guidelines issue discussed below, we find the remaining points to be without merit.

HARMLESS ERROR ANALYSIS
A review of the record in this case leads us to conclude that the error arising from the improper admission of expert psychiatric testimony is harmless. Application of the harmless error test requires a close examination of the permissible evidence on which the trier of fact could have legitimately relied, as well as an even closer examination of the impermissible evidence which might have possibly influenced the verdict. State v. Diguilio, 491 So.2d 1129, 1138 (Fla. 1986). It is well settled that even incorrectly admitted evidence is deemed harmless and may not be grounds for reversal when it is essentially the same as or merely corroborative of other properly considered testimony at trial. Clausell v. State, 548 So.2d 889, 890-91 (Fla. 3d DCA 1989). See Burr v. State, 550 So.2d 444, 446 (Fla. 1989). Cf. Pringle v. State, 553 So.2d 1304, 1305 (Fla. 3d DCA *335 1989). An error resulting from the admission of evidence at trial is harmless if, upon review of the record, it can be concluded beyond a reasonable doubt that there is no reasonable possibility that the erroneous admission of evidence affected the verdict. Clausell v. State, 548 So.2d at 890; State v. DiGuilio, 491 So.2d at 1138-39.
The record discloses that there was ample evidence, properly admitted, establishing the defendant's guilt for the crime of indecent assault on a child under sixteen. The victim, who had sufficient opportunity to observe her assailant closely throughout the course of an entire day in broad daylight, identified the defendant in court without hesitation as the person who touched her in the buttocks and invited her to "make love." Additionally, Mr. Conicelli and his nine-year-old daughter both identified the defendant in court as the person they observed touching Sarah's private parts in the water. Immediately upon witnessing this conduct, they singled the defendant out to Sarah's mother, who in turn summoned Mitch Snyderman, a member in charge of the group, who then confronted the defendant and asked him to produce his Parents Without Partners membership card. It was at this point, that the defendant took off running "like a bat out of hell" from the picnic site, heading down the beach to the boulevard and into an ice cream store.[8] Moments later, after a milelong chase, Mr. Snyderman found the defendant hiding on the side of the store and quickly returned him to the picnic site. Mr. Snyderman identified the defendant in court as the person he confronted, chased, and apprehended.
On the following day, the defendant gave a statement to a police detective, the admissibility of which he has not challenged. The defendant told Detective Gooding that he had a "real bad problem," which he admitted was a sexual problem. He told him that he was divorced from his wife, had three children in Mississippi, and conceded that the bad problem had a relationship to his divorce. The defendant stated that he first applied for membership in Parents Without Partners just a few days prior to the picnic, and admitted that he lied to them in order to gain entry into the group, leading them to believe that his children would be back in Florida with him. The defendant admitted touching several of the girls at the picnic, claiming that while they were all in the water, he could have accidentally placed his hands in their buttocks or breast area. He insisted, however, that he would never do so knowingly, adding that he could have exposed himself, but only accidentally. Then he explained that his role with the children in this case was one of teacher, not one of molester, saying that "he likes to teach children about sex." Concerning this particular incident, he stated that the girls in this case approached him and asked him about sex, and that he merely complied and explained to them what sex and the sexual organs were.[9]
All of the outlined evidence, properly admitted at trial, was to a large degree cumulative to the inadmissible testimony furnished by the two psychiatrists, who revealed the defendant's sexual preference towards female children, disclosing in the process certain factual admissions made by the defendant about his activities with the children similar to the admissions properly received through Detective Gooding's testimony. On the basis of this analysis, we conclude beyond a reasonable doubt that there is no reasonable possibility that the erroneous admission of evidence affected the trial court's verdict. See Clausell v. State, 548 So.2d at 890; State v. DiGuilio, 491 So.2d at 1138-39. Accordingly, we hold that the error was harmless, and we affirm the judgment of conviction.

*336 SENTENCING GUIDELINES
We must, however, vacate the sentence and remand for resentencing because the sentencing guidelines scoresheet used at the sentencing hearing was incorrectly calculated. Compiled as part of the presentence investigation report by a probation and parole office, the scoresheet reflects a total score of 469 points and calls for a sentence in the range of seventeen to twenty-two years. At the sentencing hearing, both the prosecutor and the defendant's attorney took issue with the accuracy of the point score on the scoresheet. The prosecutor claimed that the scoresheet failed to account for all of the defendant's prior convictions, and that the score was therefore too low. In turn, defense counsel argued that a prior felony conviction was improperly scored as a first degree felony punishable by life, rather than as a third-degree felony, resulting in a higher point score than justified by defendant's record of prior convictions. It was defense counsel's position that the proper sentencing range was from nine to twelve years, and that the court should therefore sentence the defendant to nine years. Declining to correct the scoresheet, the trial court proceeded to sentence the defendant to the statutory maximum of fifteen years incarceration, as urged by the state, which in any event fell below the scoresheet's recommended range of seventeen to twenty-two years.
The committee notes to Florida Rule of Criminal Procedure 3.701(d)(1) place on the sentencing court the ultimate responsibility of assuring that scoresheets are accurately prepared. Fla.R.Crim. P. 3.701(d)(1), Committee Notes. In order to reach a fully informed sentencing decision, the trial court must have the benefit of an accurately prepared scoresheet. Dawson v. State, 532 So.2d 89, 90 (Fla. 4th DCA 1988). See Ratushinak v. State, 517 So.2d 749, 753 (Fla. 4th DCA 1987), rev. denied, 525 So.2d 880 (1988); Hembree v. State, 519 So.2d 1138, 1139 (Fla. 2d DCA 1988). This requirement applies even if the trial court expresses an intention to impose the maximum statutory sentence at the sentencing hearing. See Davis v. State, 493 So.2d 82, 83 (Fla. 1st DCA 1986). The rationale for the rule is that the trial court might have imposed a different sentence had it had the benefit of a corrected scoresheet. See Dawson v. State, 532 So.2d at 90. Cf. Myrick v. State, 461 So.2d 1359 (Fla. 2d DCA 1984). Thus, when a discrepancy concerning the scoresheet is brought to the sentencing court's attention, the court should resolve the discrepancy and correct the scoresheet to reflect the accurate numbers. See Mitchell v. State, 507 So.2d 686, 687 (Fla. 1st DCA 1987).
Comparing the prior convictions actually scored with the defendant's record of prior convictions, as they appear on the PSI report, it becomes evident that the scoresheet used by the trial court at sentencing was indeed incorrect for the reasons urged by both the state and the defense. Florida Rule of Criminal Procedure 3.701(d)(5)(a)(2) requires that out-of-state convictions obtained under a particular statute are to be assigned the score for the analogous or parallel Florida statute. The elements of the out-of-state crime, not the stated degree or the sentence imposed, control in the determination of whether there is a Florida statute analogous to the statute proscribing the out-of-state crime. Forehand v. State, 537 So.2d 103 (Fla. 1989), aff'g 524 So.2d 1054 (Fla. 1st DCA 1988). See also Rotz v. State, 521 So.2d 355 (Fla. 5th DCA 1988). Included in the defendant's prior record is a California conviction for child molesting, which shows a disposition of "one to life." Apparently on the basis of such disposition, the California conviction was scored as a first degree felony punishable by life. Under Forehand, this method of determining the degree of the prior offense is clearly incorrect.
It is, however, unclear from the record pursuant to which California statute the defendant was convicted of child molesting. Accordingly, it is appropriate to remand for resentencing to require the state to either substantiate the appropriate California statute under which the conviction was obtained, which is then to be analogized to Florida law, or else for rescoring the prior *337 felony conviction as a third-degree felony. See Rotz v. State, 521 So.2d at 356; Fla.R. Crim. P. 3.701(d)(5)(a)(3).
Additionally, the defendant's attorney conceded that at least one scorable prior burglary conviction was completely omitted from the scoresheet. Indeed, a review of the defendant's prior record as evidenced by the PSI report, discloses that several other out-of-state convictions were altogether omitted from the scoresheet, even though they show "dispositions," as defined by Florida Rule of Criminal Procedure 3.701(d)(5)(a), and may therefore be properly scorable. See Spann v. State, 550 So.2d 164, 166 (Fla. 2d DCA 1989); Vandeneynden v. State, 478 So.2d 429 (Fla. 5th DCA 1985).
We therefore affirm the judgment of conviction of indecent assault on a child under sixteen, but vacate the sentence and remand for resentencing based on a corrected sentencing guidelines scoresheet in accordance with the views expressed herein.
POLEN, J., concurs.
GLICKSTEIN, J., concurs in part and dissents in part with opinion.
GLICKSTEIN, Judge, concurring in part and dissenting in part.
I agree that the conviction should be affirmed. What is more, I believe that the defendant has not shown error in his sentence, and that reduction would not be in order.
I am troubled both by the majority's failure to address the defendant's long history of pedophilic activities and the degree to which this history should inform the trial court's decision on sentencing. In arguing at sentencing for the statutory maximum of fifteen years, the prosecutor urged the court to consider this record:
[PROSECUTOR]: Judge, there was a recommendation in the PSI for MDSO treatment; however, this defendant here already received MDSO in California and therefore he is not entitled to it under the Florida statutes, to receive it again.
THE COURT: He wouldn't be until the end of the sentence anyway.
MDSO refers to Mentally Disordered Sex Offenders as defined by section 917.012, Florida Statutes (1987).
Although incarceration is not treatment, it is clear that treatment has not effected a cure in this case, if indeed it ever can. In the interest of preventing future victimization of our children, then, incarceration for the statutory maximum period is appropriate. I would affirm appellant's sentence as entered by the trial court.
NOTES
[1] Although to a lesser extent, Dr. Mandri also testified to a couple of factual admissions made by the defendant.
[2] We note that Dr. Perfilio's examination took place at South Florida State Mental Hospital after the defendant was committed as incompetent to stand trial. Therefore, Dr. Perfilio's testimony, based as it was on said psychiatric examination, could have had no bearing on the defendant's capacity to make a knowing and intelligent waiver of rights some six months earlier when he gave the statement.
[3] In Harris, the court held that it was error to permit both a Reverend and the victim to testify, at defendant's trial for committing a crime against nature, that the defendant told the Reverend in the victim's presence, shortly after the commission of the crime, that he was a homosexual who had had sexual relations with many prominent men.
[4] While defense counsel objected to the admission of the psychiatrists' testimony on various grounds, including lack of relevancy, prejudice, and violation of the psychiatrist-patient privilege, he failed to object on Fifth Amendment grounds. On appeal, he has not specifically argued a Fifth Amendment violation. Thus, he has failed to properly raise or preserve a Fifth Amendment challenge to the experts' testimony for purposes of appellate review. We do acknowledge that at one point during the discussion at trial concerning the admissibility of the experts' testimony, the defendant himself did complain to the trial judge that "[t]here's also been a violation of Miranda rights because they didn't give me no Miranda rights," but he has not reasserted such a violation in his brief.
[5] It is true that it was the defendant, and not the state, who first moved for the appointment of an expert, but he did so pursuant to the provisions of Florida Rule of Criminal Procedure 3.216(a). That section specifically preserves the attorney-client privilege in "matters related to the expert," who is appointed solely for the purpose of examining the indigent defendant in order to assist his public defender in the preparation of his defense, authorizing the expert to report to defense counsel only. Fla.R.Crim. P. 3.216(a); State v. Hamilton, 448 So.2d 1007 (Fla. 1984). It is clear therefore that a defense request for an expert under rule 3.216(a), does not, by definition, operate to waive any of the defendant's rights, nor does it open the door for the state to present other psychiatric evidence. See, e.g., Pouncy v. State, 353 So.2d 640 (Fla. 3d DCA 1977).
[6] Under Count II of the information the state charges that the defendant "on the 21st day of September, A.D. 1986, ... did handle, fondle or make an assault upon [the victim], a child under the age of sixteen (16) years in a lewd, lascivious or indecent manner, to-wit: did fondle the buttocks of [the victim]," in violation of section 800.04(1). The state nolle prossed Count I, attempted sexual battery on a child, prior to trial.
[7] The defendant himself had also earlier attempted to raise this same ground in the trial court when he filed a pro se "motion to dismiss" the information on the grounds that the pre-trial photographic-identification procedure was unnecessarily suggestive.
[8] In Mitch Snyderman's words: "I said I would like to see his card. At that time, he was going through his wallet, but when the other mother said, I want him arrested; he was doing something to my daughter  I don't know her exact words, but he took off like a bat out of hell."
[9] According to Detective Gooding, the defendant also told him that "he likes to work in day care centers and likes to be around children," and that he would "just hang out in parks and watch children on swings and things like that."