# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-3793

_____

MELVIN DOUGLAS HAWTHORNE,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
Ross M. Goodman, Judge.

June 13, 2018

B.L. THOMAS, C.J.

Appellant was convicted of driving under the influence causing death, driving under the influence causing serious personal injury, and driving under the influence causing property damage. Although Appellant was charged and found guilty of vehicular homicide and driving without a valid license, the State dismissed those counts. Appellant was sentenced to a lengthy term of imprisonment. The charges were based on a traffic accident in which the State's expert witness testified Appellant was driving approximately 79 miles per hour when he drove into the victims' car. The impact of the accident killed one 13-year-old victim and seriously injured another young victim.

The tragic events began twelve hours after Appellant was released from the county jail. Appellant struck a vehicle but did

not stop, and the driver of that car pursued Appellant in an attempt to obtain his tag number. Appellant then ran a stop sign, hit a guard rail, and crashed into the victims' car, causing the death and injuries. Appellant's blood test showed .90 milligrams of methamphetamine and .10 milligrams of amphetamine per liter of his blood.

The State presented the expert testimony of Dr. Bruce Goldberger, Director of Toxicology and Chief of the Division of Forensic Medicine at the University of Florida College of Medicine. The defense objected to Dr. Goldberger's testimony, arguing that the evidence was not admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

During the pretrial *Daubert* hearing, Dr. Goldberger testified that methamphetamine impacts on human physiology have been known for "more than a century," but most studies analyzing amphetamine and methamphetamine are "case-type" studies, because doctors cannot ethically give human subjects impairing doses of amphetamine or methamphetamine. He testified that epidemiologic studies have been conducted of drug impacts on traffic accidents. Dr. Goldberger published four books, including the "Handbook of Workplace Drug Testing," which contained a chapter on methamphetamines. Dr. Goldberger testified that if he is informed of details from before, during, and after a crash, including any relevant blood samples tested for drug consumption, he can form an accurate opinion on whether that person was impaired. He further testified that he had utilized this analytical method "maybe thousands of times," and it is a method commonly accepted in the field of forensic toxicology.

Dr. Goldberger testified that there is no set amount of amphetamine that would necessarily constitute impairment. He testified that a person who had been incarcerated for "a period of time" with no access to amphetamines would have no tolerance to the substance upon leaving incarceration.

Dr. Goldberger testified that he tested Appellant's blood sample and that "this concentration is a very significant . . . [i]ndividuals will die as a consequence of ingesting this much methamphetamine." Based on his tests and studies of the effects

2

of methamphetamine on the body and on a person's driving, many of the details of the episode – speeding, running a stop sign, crashing into a guardrail, rear-ending a car, having dilated pupils, glassy eyes, rambling speech, cottonmouth, being restless and scratching himself in a hospital bed – were consistent with someone who was impaired by methamphetamine. Dr. Goldberger testified that the method proposed by the State – whereby the prosecutor would pose a hypothetical situation identical to the facts of the present case, and he would testify as to whether those facts were consistent with someone impaired by methamphetamine – was a method that is generally accepted in the field of forensic toxicology. The trial court found the testimony proffered by the State was relevant and necessary to assist the jury in understanding the issue, and that the method proposed by Dr. Goldberger was admissible under *Daubert*.

At trial, Dr. Goldberger testified that the facts in evidence were consistent with impairment caused by the ingestion of methamphetamine. He also testified that, because giving test subjects impairing amounts of methamphetamine is "too dangerous," there is not a generally accepted method of extrapolation to determine time of ingestion for methamphetamine and the time within which impairment would occur. On cross-examination, Dr. Goldberger testified that he could not determine whether the ingestion of the drug occurred two, five, or eight hours before the crash.

The State submitted into evidence Appellant's certified driving record, to which Appellant objected, asserting the record was prejudicial under section 90.403, Florida Statutes. The trial court ruled that the record of active suspensions of Appellant's driver's license (with previous convictions redacted) was relevant to prove that Appellant drove while he knew his license was suspended. The partially redacted driving record was admitted into evidence over Appellant's objection.

Appellant asserts reversible errors based on the admission of Dr. Goldberger's testimony under *Daubert*, the admission of Appellant's redacted driving record, and the evidence of his release from county detention shortly before the traffic accident.

3

We hold that the trial court did not commit reversible error in any of these three evidentiary decisions.

First, the trial court did not abuse its discretion in allowing Dr. Goldberger to answer the hypothetical propounded by the prosecuting attorney, as this expert testimony was not pure opinion testimony under section 90.702, Florida Statutes. We have previously noted that "'[p]ure opinion' testimony is based only on clinical experience and training; in contrast, the cornerstone of section 90.702 is relevance and reliability based on scientific knowledge. *See Daubert,* 509 U.S. at 590, 113 S. Ct. 2786 (explaining that "the subject of an expert's testimony must be 'scientific knowledge'")." *Booker v. Sumter Cty. Sheriff's Office/N. Am. Risk Servs.*, 166 So. 3d 189, 194 (Fla. 1st DCA 2015). Section 90.702, Florida Statutes, requires that to admit expert testimony involving "scientific, technical, or other specialized knowledge" to help juries decide a "fact in issue," the trial court must determine if "(1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case."

Here, we conclude that the expert witness relied on ample data – "more than a century" of medical data and observation – regarding the impact of methamphetamine on human beings; thus, the first statutory factor was met. Further, the expert witness' opinion was based on sufficient facts or data, as the blood tests, crash data, lay testimony, and other evidence provided that foundation. Thus, the third statutory factor was met, in our view.

We must next determine whether the witness' testimony was the "product of reliable principles and methods," the second statutory factor. *Frederick v. Swift Transp. Co. Inc.,* 591 F. Supp. 2d 1149, 1151-52 (D. Kan. 2008) (expert testimony of chief medical examiner of Georgia regarding amount of methamphetamine present in urine properly admitted, based on witness' methodology, reliance of toxicology analysis, *"Drug Abuse Handbook"* and *"Disposition of Toxic Drugs and Chemicals in Man,"* and underlying data, despite lack of information based on amount in blood). Dr. Goldberger testified that his

4

methodology of determining whether a set of facts was consistent with methamphetamine impairment was commonly accepted in his field, and testified that this method was based on published studies by him and other professionals in his field, and at trial he applied those methods to the facts of this case. Therefore, we conclude that his expert testimony was admissible under *Daubert*, and the trial court did not abuse its discretion in admitting his testimony.

We now address the two other evidentiary rulings. A trial court's admission or exclusion of evidence generally is reviewed for an abuse of discretion. *San Martin v. State*, 717 So. 2d 462, 470-71 (Fla. 1998). Florida Statutes provide further guidance: "Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2016). "All relevant evidence is admissible, except as provided by law." § 90.402, Fla. Stat. (2016). "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2016). "'Relevant evidence is inherently prejudicial; however it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matters.'" *State v. Blackwell*, 787 So. 2d 963, 965 (Fla. 1st DCA 2001) (quoting *State v. Andres*, 552 So. 2d 1151, 1153 (Fla. 3d DCA 1989)).

Evidence of Appellant's release from jail twelve hours before the accident was relevant to prove a material fact – that he recently ingested methamphetamine and was impaired when he ran into the victim's car at a high rate of speed. *Ratushinak v. State,* 517 So. 2d 749, 751 (Fla. 4th DCA 1987) (evidence that defendant stated he had been recently released from jail was relevant, as sexual-battery victim testified perpetrator made this comment during crime, thus, testimony tended to prove identity). The time when Appellant ingested the methamphetamine was relevant to proving that he was impaired when the accident occurred, an element of DUI manslaughter. § 316.193(3), Fla. Stat. (2016). The trial court correctly admitted this evidence.

Appellant further argues that evidence of his driving record, which contained multiple license suspensions, was not relevant to

prove that he knowingly drove without a license on the day of the accident. We disagree. A driving record showing a license suspension is sufficient to prove that a defendant had notice that his or her license was suspended. *See Anderson v. State*, 87 So. 3d 774, 780 (Fla. 2012) (stating "the State sufficiently proved knowledge by verifying that the DHSMV sent notice of Anderson's license suspension . . . . [The State] entered into evidence the driving record of Anderson . . . ."). Appellant argues that the record showing that his license was suspended "was irrelevant as to whether on August 17th [2014], the date of the offense, Appellant was driving without a valid license." But the driving record tended to prove a material fact to a charge of driving while license suspended and that Appellant knew his license was suspended. The trial court did not abuse its discretion in admitting the partially redacted evidence.

The judgment on appeal is AFFIRMED.

JAY and M.K. THOMAS, JJ., concur.

—————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

—————————————

Andy Thomas, Public Defender, Maria Ines Suber, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.

6