499 So.2d 864 (1986)
Frank Edward PERICOLA, III, Appellant,
v.
STATE of Florida, Appellee.
No. BL-84.
District Court of Appeal of Florida, First District.
December 5, 1986.
Rehearing Denied January 23, 1987.
*865 Henry R. Barksdale of Henry R. Barksdale, P.A., Pensacola, for appellant.
Jim Smith, Atty. Gen., Kurt L. Barch, Asst. Atty. Gen., for appellee.
MILLS, Judge.
Pericola appeals from a conviction of attempted first degree murder, possession of a short-barrelled rifle, possession of a firearm while under indictment for a felony and trespass while armed. We affirm.
In December 1984, police officer Henderson effected Pericola's arrest for possession of a concealed weapon and burglary of a structure while armed; Pericola was charged with these crimes by information dated 6 December 1984. On the night of 13 December, Henderson was shot while in the parking lot of his apartment building. The light cast by the parking lot lights and by the discharging firearm enabled Henderson to positively identify Pericola as his assailant.
Pericola fled the scene in a beige automobile, but his customary vehicle, a blue Jeep, was discovered parked at the local airport *866 soon after the shooting and placed under intense police surveillance. During the course of the surveillance, which lasted until Pericola's arrest in the early morning hours of 14 December, and without a warrant, a police officer seeking to disable the motor discovered a gun concealed in the engine compartment. Pericola's fingerprints were later found on the gun and tests revealed that the bullets extracted from the victim had been fired from it. Pericola's motion to suppress the gun was denied, the court finding that the officer's conduct in finding the gun was not a search barred by the 4th Amendment. The decision was further based on a warrant obtained after the discovery of the gun, the court finding that its issuance was supported by probable cause and that, pursuant to it, the gun would have been "inevitably discovered" by lawful means.
Prior to the commencement of trial, Pericola filed a motion to be declared incompetent to stand trial pursuant to Rule 3.210, Fla.R.Crim.P. The trial court found "reasonable ground to believe" that Pericola was not competent to stand trial and ordered his examination by two experts as required by Rule 3.210(b). Following these examinations, the court declared Periocola incompetent to stand trial and required his involuntary hospitalization at Florida State Hospital, where he was examined, observed by the staff and given a battery of psychological tests.
As a result of this hospitalization, a report was filed with the court opining that Pericola was competent to stand trial which was then rescheduled. One month prior to the second scheduled trial, Pericola filed another motion to determine his competence to stand trial, based on the previously-considered medical reports and his attorney's belief that he could not assist in his defense. A hearing was held the next day after which the court ruled that no doubt as to Pericola's competence had been raised, and denied the motion.
At the commencement of trial the defense moved for a continuance to determine competency to stand trial. In response to the court's inquiry, defense counsel conceded that Pericola's mental state had not hindered the preparation of his defense. Pericola himself testified that he knew the charges against him, knew the function of the jury and the result of a guilty verdict and had understood the jury selection process and was satisfied with the results. The court found him competent to stand trial which then proceeded.
Evidence at trial showed that Pericola was positively identified by the victim as his assailant. It was also shown that the gun discovered in Pericola's car bore his fingerprints and had fired the bullets extracted from the victim. The charges brought by the 6 December 1984 information were tried along with the charges resulting from the later shooting; namely, attempted first degree murder, possession of a short-barrelled rifle and possession of a firearm while under indictment. Although a motion for judgment of acquittal was granted as to the 6 December concealed weapon charge, Pericola was found guilty of trespass while armed, and of all counts as charged in the second information. A subsequent motion for judgment of acquittal directed to the charge of possession of a firearm while under indictment was denied.
The initial sentencing proceeding was held on 19 December 1985, at which evidence was received as to Pericola's competence to be sentenced, pursuant to Rule 3.720(a)(1), Fla.R.Crim.P. That rule provides, in pertinent part, that a defendant may allege and show as legal cause why sentence should not be pronounced that he is "insane." The court established as the standard for determining that "insanity" Pericola's "understanding of the nature and effect of the possible sentences that could be imposed and why imposed." The medical testimony showed that, while Pericola's mental condition had greatly deteriorated as a result of the stress of his conviction, he knew he had been convicted by a jury in a court of law and that there was a resulting penalty which could be a prison term. The court determined that *867 Pericola had created cause to believe he was insane, but counsel stipulated that no further expert examinations need occur.
The judge took the matter under advisement, and reconvened the sentencing proceeding on 23 December. Pericola coherently testified that he knew he was being sentenced for a shooting which had occurred on 14 December 1984, that he knew the victim and knew he would go to jail. Based on this testimony and on the medical testimony received at the earlier sentencing hearing, the court found Pericola "oriented to time, place and person with the capacity to understand, and the actual understanding of, the nature and effect of the penalty and why it was being imposed." The court also found that he knew and understood that he had been found guilty by a jury and could be sentenced to life in prison and proceeded to sentence him.
A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or if he has no rational, as well as factual, understanding of the proceedings against him. Section 916.12(1), Florida Statutes (1985); Rule 3.211(a), Fla.R. Crim.P. Pericola does not complain of the court's initial finding of competency to stand trial, but that there should have been further evaluations of his competency following the second two motions.
While we agree that, even when a defendant is declared competent to stand trial at the outset, the trial court must be alert to circumstances suggesting a change that would give rise to reasonable grounds to believe a defendant is unable to meet the competency standard, only if a bona fide and reasonable doubt is raised as to defendant's capacity is the court required to conduct another competency proceeding. Holmes v. State, 494 So.2d 230 (Fla.3d DCA 1986). We find no error in the trial court's conclusion that neither of the latter two motions addressing competency raised such doubt.
With regard to his competency to be sentenced, again Pericola does not challenge the procedures employed by the trial court. He contends rather that the court erred in the standard used to determine that competency in that the proper standard is that for competency to stand trial. We disagree. Rule 3.720 specifically requires a determination of "insanity"; competency to stand trial is not mentioned. Further, the purpose of determining competency to stand trial is "to insure that all persons who must defend themselves in the criminal arena are mentally capable of assisting in the conduct of that defense." Hayes v. State, 343 So.2d 672, 673 (Fla.2d DCA 1977). At the sentencing phase, a defendant has been found guilty; no further defense "in the criminal arena" need be conducted. Finally, this court's decision in Baranko v. State, 428 So.2d 324 (Fla. 1st DCA 1983) does not mandate the result sought by Pericola, as an actual determination of insanity was not involved therein.
Although neither Rule 3.720 nor its predecessor statute, Section 921.09, Florida Statutes (1969), define "insanity" in the sentencing context, we find no error in the employment by the trial court of the standard for insanity sufficient to preclude execution of the death penalty by the Governor. Section 922.07, Florida Statutes (1969), set forth the procedures to be followed by the Governor when insanity was alleged as a defense to the execution of the death penalty. That statute, like Section 921.09, provided no legal standard for the determination of insanity.
However, by Chapter 70-339, Section 134, Section 922.07 was amended to provide, as it does today, that "when the Governor is informed that a person under sentence of death may be insane," he must determine sanity by deciding, based on expert opinion, whether the convicted person "has the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him." The comment to this amendment indicates that it was intended to "set up standards for determining sanity" and to give the Governor "legal standards and professional guidelines for making his decision."
In the same term in which Section 922.07 was amended, Section 921.09 was *868 repealed and replaced by Rule 3.740. While no definition of sanity sufficient to preclude sentencing was similarly included, the relationship of the determination of sanity for sentencing purposes and for the purpose of execution can be seen in the former identity of language between the two provisions. Therefore, we find that the trial court did not err in determining Pericola's sanity for purposes of sentencing by using the same standard statutorily mandated for use by the Governor in determining sanity sufficient to preclude execution of a death sentence.
Pericola next alleges that the trial court erred in denying his motion to suppress the gun seized from his vehicle without a warrant. Assuming arguendo that the evidence should have been suppressed, a judgment will not be reversed unless the error was prejudicial to the substantial rights of the appellant. The reviewing court must inquire generally whether, but for the error, it is likely that the result below would have been different. While it is true that, when the error affects the constitutional rights of the appellant, the reviewing court may not find it harmless if there is a reasonable possibility that the error may have contributed to the accused's conviction or if the error may not be found harmless beyond a reasonable doubt, even such constitutional error may be treated as harmless where the evidence of guilt is overwhelming. Palmes v. State, 397 So.2d 648 (Fla. 1981); Roman v. State, 475 So.2d 1228 (Fla. 1985).
Here, the victim positively identified Pericola as his assailant, being familiar with him from their earlier encounter. The victim observed Pericola's possession of a gun, and the type of gun used was identified by expert analysis of the spent shell casings found at the scene and the bullets extracted from the victim. Therefore, the gun itself and the other evidence obtained therefrom were not indispensable to proof of the crimes charged and any error in its admission was harmless.
Finally, Pericola alleges that his motion for judgment of acquittal as to the charge of possession of a firearm while under indictment should have been granted as, at the time of the shooting, he had been charged not by indictment but by information. Section 790.07(2), Florida Statutes, provides that:
Whoever, while ... under indictment, displays, uses, threatens, or attempts to use any firearm ... is guilty of a felony of the second degree (emphasis supplied).
Section 790.001(7) defines "indictment" for the purposes of the chapter as "an indictment or an information in any court under which a crime punishable by imprisonment for a term exceeding 1 year may be prosecuted" (emphasis supplied). At the time of the shooting, Pericola was charged by information with two third-degree felonies, each punishable "by a term of imprisonment not exceeding 5 years." Section 775.082(3)(d), Florida Statutes. Therefore, although charged under an information, the definition of "indictment" was met so that Pericola's conviction under Section 790.07(2) was proper.
Affirmed.
SHIVERS and JOANOS, JJ., concur.