660 So.2d 244 (1995)
James Eugene HUNTER, Appellant,
v.
STATE of Florida, Appellee.
No. 82312.
Supreme Court of Florida.
June 1, 1995.
Rehearing Denied September 13, 1995.
*246 James B. Gibson, Public Defender and George D.E. Burden, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Kenneth S. Nunnelley, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
James Eugene Hunter appeals his convictions and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the convictions and sentence.

FACTS
The following facts were established at trial. On September 16, 1992, James Hunter (a.k.a. Michael Miller), Tammie Cowan, Cathy Woodward, Charles Anderson, Andre Smith, and Eric Boyd traveled by car from St. Augustine to DeLand. Tammie Cowan testified that there were two black BB guns and one silver handgun in the car. Boyd and Anderson had the BB guns and Hunter had the handgun. In DeLand they stopped briefly to see Andre Smith's mother. Thereafter, at approximately 11:44 p.m., Cowan stopped the car and Anderson, Boyd, Smith, and Hunter exited. Hunter then confronted and robbed a man on the street, using the silver handgun. Hunter and his companions then departed for Daytona Beach. Shortly afterwards, a "be on the lookout" (BOLO) alert for the DeLand robbers was transmitted by the police throughout the Volusia County area. The BOLO described a gray four-door sedan occupied by at least five black individuals, two of whom were females, who were suspects.
After the robbery, Hunter directed Cowan to drive to Daytona Beach and the vicinity of Bethune-Cookman College where four young men were standing outside the "Munch Shop." Hunter instructed Cowan to stop the vehicle, and Hunter, Lewis, Anderson, and Smith exited and approached the four men. Hunter was armed with the silver handgun.
Hunter approached the men and ordered them to "give it up." Hunter and his companions then robbed the men at gunpoint. Thereafter, while the men were lying face down on the sidewalk, Hunter shot each of them in turn. Wayne Simpson was the last victim to be shot in this process, and he subsequently died. Hunter and his colleagues then fled with the victims' clothing, jewelry, and other miscellaneous items of personal property. When Hunter returned to the car, he ordered Cowan to leave, and told her that he had fired the gun because a victim had tried to run. Shortly thereafter, at 12:40 a.m., Deputy Richard Graves observed a vehicle in Ormond Beach matching *247 the DeLand BOLO. Graves stopped the automobile, and Cowan told Graves that she and the others had come from DeLand. While the car was stopped, the DeLand robbery victim was brought to the scene where he identified Hunter as his robber and also identified the car. Cowan consented to a search of the car which yielded two BB guns and personal property belonging to the victims of both the DeLand and Daytona Beach robberies. The gun used by Hunter was never found.

The Charges, Verdict, and Sentencing
Hunter was charged with one count of first-degree murder, three counts of attempted first-degree murder, one count of attempted armed robbery, and three counts of armed robbery. The jury found Hunter guilty of all eight charges. After a penalty phase proceeding, the jury recommended by a vote of nine to three that Hunter receive the death penalty for the murder of Simpson.
In its sentencing order, the trial court found two aggravators: prior violent felony conviction[1] and capital felony committed during a robbery[2] and no statutory mitigating circumstances. The court found ten non-statutory mitigating factors: (1) fetal alcohol syndrome; (2) separation from siblings; (3) lack of motherly nurturing and bonding; (4) physical abuse; (5) emotional abuse and neglect; (6) unstable environment; (7) violent environment; (8) lack of positive role models; (9) death of adoptive mother; and (10) narcissistic personality disorder.

APPEAL
Hunter raises fourteen claims in this appeal. Although Hunter does not directly challenge the sufficiency of the evidence, we initially observe that the record contains substantial competent evidence to support all of his convictions.

Competency
Hunter first claims that the trial court erred in finding him competent to stand trial. The test for whether a defendant is competent to stand trial is whether "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding  and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960); see also § 916.12(1), Fla. Stat. (1993); Fla.R.Crim.P. 3.211(a)(1). The reports of experts are "merely advisory to the [trial court], which itself retains the responsibility of the decision." Muhammad v. State, 494 So.2d 969, 973 (Fla. 1986) (quoting Brown v. State, 245 So.2d 68, 70 (Fla. 1971), vacated in part on other grounds, 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972)), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987). And, even when the experts' reports conflict, it is the function of the trial court to resolve such factual disputes. Fowler v. State, 255 So.2d 513, 514 (Fla. 1971). The trial court must consider all evidence relative to competence and its decision will stand absent a showing of abuse of discretion. Carter v. State, 576 So.2d 1291, 1292 (Fla. 1989), cert. denied, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991).
Here, the trial court considered a wide variety of lay and expert evidence in making its determination as to whether Hunter was competent to stand trial. The evidence included: the report and testimony of Dr. Jack Rothstein, an expert in psychiatry and neurology; the report of Dr. Lawrence Ehrlich, the court-appointed forensic psychiatrist; the report and testimony of Dr. Lynn Westby, a court-appointed licensed psychologist; the testimony of Ismael Lopez, a mental health specialist at the Volusia County Jail; and the report and testimony of Olney McLarty, the forensic court liaison.
*248 After considering the evidence and observing Hunter's behavior in court, the trial court found Hunter competent to stand trial. Although there were conflicting opinions from the experts on the issue of competency, it was within the sound discretion of the court to resolve the dispute. There is evidence to support that resolution.[3] Therefore, the trial court did not abuse its discretion in finding Hunter competent to stand trial.
Hunter also claims error in the denial of his renewed motion to determine competency. In this motion, defense counsel made several observations about his client's continuing unusual behavior, including Hunter's repeated threats to disrupt the proceedings. Defense counsel also referred to a second report from Dr. Rothstein which primarily discussed mitigating circumstances, but also opined that Hunter was incompetent to stand trial.
Once a defendant is declared competent, the trial court must still be receptive to revisiting the issue if circumstances change. However, only if bona fide doubt is raised as to a defendant's mental capacity is the court required to conduct another competency proceeding. Pericola v. State, 499 So.2d 864, 867 (Fla. 1st DCA 1986), review denied, 509 So.2d 1118 (Fla. 1987); see also Drope v. Missouri, 420 U.S. 162, 180-81, 95 S.Ct. 896, 908, 43 L.Ed.2d 103, 118-19 (1975). A presumption of competence attaches from a previous determination of competency to stand trial. Durocher v. Singletary, 623 So.2d 482, 484 (Fla.), cert. dismissed, ___ U.S. ___, 114 S.Ct. 23, 125 L.Ed.2d 774 (1993).
Upon review of the record, we find no abuse of discretion by the trial court. Hunter presented nothing materially new in his second competency motion. While there was continuing evidence of incompetence, it was the same or similar to the evidence previously asserted and was not of such a nature as to mandate a new hearing.

Jury Selection
Hunter argues that the trial court erred by preventing defense counsel from exercising peremptory backstrikes once the entire jury panel was formed.[4] In Gilliam v. State, 514 So.2d 1098 (Fla. 1987), we reaffirmed a defendant's right to challenge a prospective juror before the jury is sworn and held that "`[a] trial judge has no authority to infringe upon a party's right to challenge any juror, either peremptorily or for cause, prior to the time the jury is sworn.'" Id. at 1099 (quoting Jackson v. State, 464 So.2d 1181, 1183 (Fla. 1985)).
In this case, when defense counsel expressed a desire to backstrike once the entire jury panel was formed, the trial court responded:
I'm going to go forward. If you come back and backstrike twice with this group, I'm going to personally take some sanctions against you as an officer of this Court.
Do you understand?
We find that the trial judge's comments are inconsistent with our holding in Gilliam. See also Fla.R.Crim.P. 3.310. However, Hunter has been unable to demonstrate any *249 prejudice by the trial court's action because trial counsel had exhausted his allotted peremptory challenges when the opportunity to backstrike arose  i.e., when the jury panel was formed. Hence, we find no prejudicial error.

Motion to Suppress
As his fourth claim, Hunter asserts that the evidence from the stop and search of the vehicle should have been suppressed. A law enforcement officer may stop a vehicle and request identification from its occupants when the officer has founded or reasonable suspicion that the occupants of the vehicle have committed, are committing, or are about to commit a crime. § 901.151(2), Fla. Stat. (1993); Sumlin v. State, 433 So.2d 1303, 1304 (Fla. 2d DCA 1983).[5] A "mere" or "bare" suspicion will not suffice. Sumlin, 433 So.2d at 1304.
A "founded suspicion" is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge. State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). Several factors are relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO: (1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information. State v. Wise, 603 So.2d 61, 63 (Fla. 2d DCA 1992); cf. Lachs v. State, 366 So.2d 1223, 1226 (Fla. 4th DCA 1979) (restating factors enunciated by the Fourth DCA in Stevens: time; day of week; location; physical appearance of suspects; behavior; appearance of involved motor vehicle; anything incongruous or unusual in the situation; reliability of BOLO).
The BOLO in this case provided:
BOLO FOR A GRAY 4 DOOR VEHICLE WITH 3 B/M'S 2 B/F'S; ALL SUBJECTS IN VEHICLE ARMNED [SIC] WITH AUTOMATIC WEAPONS; SUBJECTS JUST COMMITTED THREE ARMNED [SIC] ROBBERY'S [SIC] TO PERSONS IN OUR CITY; ALL SUBJECTS APPEARED TO BE IN THEIR TEENS TO TWENTIES; IF IN CONTACT USE CAUTION; HOLD AND NOTIFY THIS AGENCY; TIME LAPSE 20 MINUTES FROM FIRST ROBBERY 10 MINUTES FROM THE THIRD ROBBERY; VEHICLE LAST SEEN HEADED NORTH ON GARFIELD AVE IN OUR CITY.
In addition, Graves was informed that the robbery victim described the driver as a black female and that a front-seat passenger was also a black female.
We find no error in the trial court's conclusion that Deputy Graves had a founded suspicion to stop the vehicle. The length of time and distance from the robbery, the source of the BOLO, the time, and, particularly, the specificity of the description of the vehicle's occupants, all support the stop. There is also no evidence that the officer made the stop for any reason other than responding to the BOLO.

Continuance
Fifth, Hunter claims that the trial court erred in denying a continuance. "While death penalty cases command [the Court's] closest scrutiny, it is still the obligation of an appellate court to review with caution the exercise of experienced discretion by a trial judge in matters such as a motion for a continuance." Rose v. State, 461 So.2d 84, 87 (Fla. 1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); see also Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981).
Hunter was indicted on October 6, 1992, and counsel was appointed shortly thereafter. Hunter received a continuance on February 24, 1993. On July 19, 1993, he sought a second continuance of the trial scheduled for August 2, 1993. Hunter alleged: (1) on July 9, 1993, counsel received over 200 pages of new discovery materials; (2) between July 9th and 15th, counsel received lists adding more witnesses; (3) counsel needs additional *250 time to review a recent statement made by co-defendant Smith; and (4) additional time is required to prepare for a potential penalty phase.
Given that the case was pending for at least ten months and that defense counsel still had over three weeks to prepare for trial, we find that the trial court did not abuse its discretion in denying the second motion for continuance. We also note that none of the witnesses on the supplemental lists actually testified at trial, and most were jail employees who would allegedly testify as to Hunter's behavior in jail. Importantly, there is also no indication that Appellant was actually prejudiced in any way by the denial of the continuance.

Trial
Hunter next argues that the trial court erred in failing to declare a mistrial based upon his claim that the State committed a Brady[6] violation when it failed to disclose photographs which depicted Hunter in clothing different from that described by eyewitnesses. See also Fla.R.Crim.P. 3.220(a)(2) (The State shall disclose "any material information within the State's possession or control which tends to negate the guilt of the accused as to the offense charged.").
"The test for measuring the effect of the failure to disclose exculpatory evidence ... is whether there is a reasonable probability that `had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Duest v. Dugger, 555 So.2d 849, 851 (Fla. 1990) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)). To prove that there has been a Brady violation, a defendant must prove: (1) that the undisclosed evidence actually exists; (2) that the evidence was suppressed; (3) that the evidence was exculpatory; and (4) that the defendant was prejudiced by the non-disclosure. James v. State, 453 So.2d 786, 790 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984).
During the trial, Detective Flynt referred to certain photographs taken by Deputy Graves and attached to the field interview (FI) cards prepared by Graves at the time Hunter was arrested. Defense counsel objected and informed the court that he was never provided these pictures. Initially, Hunter moved for a mistrial on the ground that the "State had in their possession photographs of all four defendants after they were arrested [the night of the murder]."
The court conducted an inquiry which revealed that the prosecution did not have in its possession the photographs of the Defendant taken by Deputy Graves on the night of the arrest and referred to by Detective Flynt. Three sets of photographs were involved in this inquiry: the photographs attached to the FI cards (FI photos), the photographs contained in the mug showup folders (lineup photos), and a photocopy of the photographs contained in the mug showup folders. Detective Flynt obtained the FI photos from the DeLand Police Department and was not "aware of any other photos being made." It was also determined that the photographs of Hunter, Smith, and Boyd, which were taken at the Ormond Beach district office and at Investigator McLean's DeLand office, were contained in the mug showup folders and used in a photo-lineup.
In denying the motion for mistrial, the trial court found that although the FI photos were not previously disclosed to Hunter, those photographs were "[b]asically head shots" (since the defendants pictured were not wearing shirts) which were not exculpatory. The judge found that Hunter had not established the existence of any undisclosed photographs depicting Hunter's clothing.
Upon review, we find that the record supports the trial court's finding that the lineup photos were disclosed to defense counsel.[7] It is undisputed that Hunter's counsel was present at a deposition where such photographs were presented and counsel not only had an opportunity to examine the photographs, but also received a photocopy of the *251 lineup photos. We also agree with the trial court's conclusion that the FI photos, which were not previously disclosed, were not exculpatory.[8] In short, we find there was no error or abuse of discretion on the part of the trial court in denying the motion for mistrial.
Hunter argues, as his seventh issue, that the trial court erred by allowing the State to present evidence of the DeLand robbery. In Florida, evidence of other crimes, wrongs and acts is admissible if it is relevant (i.e., it is probative of a material issue other than the bad character or propensity of an individual). Charles W. Ehrhardt, Florida Evidence § 404.9 (1993 ed.). Among the purposes for which a collateral crime may be admitted is establishment of the entire context out of which the criminal action occurred. Heiney v. State, 447 So.2d 210, 213-214 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981); Smith v. State, 365 So.2d 704 (Fla. 1978); see also Ashley v. State, 265 So.2d 685, 693-94 (Fla. 1972) (holding that evidence of four other murders committed shortly after the murder for which defendant was tried was admissible). Inseparable crime evidence is admitted not under 90.404(2)(a) as similar fact evidence but under section 90.402 because it is relevant. Gorham v. State, 454 So.2d 556, 558 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 941, 83 L.Ed.2d 953 (1985). We find no error in the trial court's conclusion that the DeLand robbery was part of the context in which this murder took place. The close connection between the two events is set out in detail above.
We also reject Hunter's contention that the State introduced collateral crime or bad act evidence in violation of Hunter's due process rights when Cowan testified that she last saw the silver handgun when Hunter pointed it at one of his colleagues. The State contends that the evidence was relevant to establish Hunter's possession of the weapon after the shootings, and also to establish the context of the criminal transaction. We agree.
Next, Hunter maintains that the trial court erred by limiting the cross-examination of Detective Flynt, a State witness. Section 90.612(2), Florida Statutes (1993), states that "[c]ross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Detective Flynt was called as a chain-of-custody witness and his testimony was limited. Defense counsel's attempted cross-examination was clearly outside the scope of direct. Therefore, the trial court did not err in limiting the cross-examination of Detective Flynt.
As his tenth issue on appeal, Hunter claims that the trial court erred by not conducting a Richardson hearing after defense counsel alleged a discovery violation by the State. Defense counsel requested a Richardson hearing based on the revelation that the State's psychiatrist had previously seen Hunter in 1985 as a juvenile. In Richardson v. State, 246 So.2d 771 (Fla. 1971), this Court set forth a mandatory procedure to be followed by the trial court in the event of a discovery violation. See generally 14A Fla. Jur.2d Criminal Law §§ 1549-60 (1993). In assessing the extent to which sanctions should be imposed for a violation of the discovery rules, the trial court must specifically determine whether, and to what degree, the violation has prejudiced the other party. State v. Hall, 509 So.2d 1093, 1096 (Fla. 1987). Although the Court has broad discretion in making this determination, such discretion may only be exercised after the trial judge has made a formal inquiry into all of the circumstances surrounding a party's noncompliance with the discovery rule. Id. at 1097.
The record shows that the trial court made an adequate inquiry into the surrounding facts and circumstances of the alleged discovery violation to support its conclusion and satisfy the requirements of Richardson and *252 its progeny.[9] Therefore, we affirm on this issue.
Hunter claims next that the trial court erroneously allowed a State psychiatric expert, Dr. Mhatre, to give his opinion on Hunter's credibility when Mhatre testified:
Q [Prosecuting Attorney] All right. Based on your view of those voluminous materials you have outlined in your observations of Mr. Hunter over the last two days and having an opportunity now to hear him testify yesterday, were you able to form an opinion of the defendant's mental health within the reasonable bounds of medical certainty?
....
A [Dr. Mhatre] Well, I have several opinions about it. Number one, I found him to be an absolute liar.
When defense counsel objected, the trial court sustained the objection and instructed the jury "to disregard the last comment of Dr. Mahtra [sic]." However, the court denied a motion for mistrial.
We reject Hunter's claim that Mhatre's testimony mandated a mistrial. Under the circumstances we conclude that the sustaining of the objection and the curative instruction were sufficient to cure any error. A mistrial should be granted only where it is apparent that the defendant cannot receive a fair trial. Dr. Mhatre's testimony was not favorable to Appellant, and in that context we find this particular comment not to be so egregious as to deny appellant a fair trial. As in Morgan v. State, 639 So.2d 6, 12 (Fla. 1994), the doctor's testimony here pertained to his mental health analysis and diagnosis of Hunter rather than to any particular assertions by Hunter as to his involvement in the crime. Considering that context, we find no error in the denial of a mistrial.

Penalty Phase
Hunter claims that during the penalty phase the trial court erred by instructing the jury on the statutory cold, calculated, and premeditated aggravating circumstance. A judge should instruct a jury only on those aggravating circumstances for which credible and competent evidence has been presented. Fla.Std.Jury Instr. (Crim.) p. 75; cf. Atkins v. State, 452 So.2d 529, 532 (Fla. 1984) (for actual sentencing purposes, the aggravating circumstances must be proven beyond a reasonable doubt).
Our review of the record reveals some evidence that supported the cold, calculated, and premeditated aggravator. For example, the facts we have already outlined reflect that Hunter deliberately and successively fired bullets from a handgun into four human beings lying helplessly on the ground without any apparent reason or justification. The victim, Wayne Simpson, was the fourth and last person to be shot. Therefore, because there was evidence presented that supported the cold, calculated, and premeditated aggravator, it was not error for the trial court to have instructed the jury.[10]

Constitutional Challenge
As the thirteenth issue on appeal, Hunter challenges the constitutionality of section 921.141, Florida Statutes (1993), on numerous grounds, including: (1) the cold, calculated, and premeditated circumstance and the form it takes as a jury instruction is unconstitutionally vague; (2) the felony murder circumstance fails to narrow the discretion of the sentencer and therefore violates the Cruel and Unusual Punishment and Due Process clauses of the state and federal constitutions; (3) Florida's sentencing scheme "places great weight on margins for death as slim as a bare majority"; (4) Florida law "makes the aggravating circumstances into elements of the crime so as to make the defendant death-eligible"; (5) the standard *253 jury instructions do not inform the jury of the great importance of its penalty verdict in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (6) court-appointed counsel in capital cases is inadequate; (7) the trial court has an ambiguous role in Florida's capital punishment system; (8) Florida's judicial system is racially discriminatory; (9) Florida's capital punishment scheme has prevented the evenhanded application of appellate review and the independent reweighing process envisioned in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); (10) Florida's aggravating circumstances are applied inconsistently at the appellate level; (11) use of the contemporaneous objection rule results in disparate application of the law in capital sentencing; (12) the failure of Florida's appellate review process is demonstrated by this Court's inability to consistently apply Tedder v. State, 322 So.2d 908 (Fla. 1975); (13) the lack of a special verdict from the jury on aggravating and mitigating circumstances violates the Eighth Amendment; (14) the prohibition against mitigation of a death sentence under Florida Rule of Criminal Procedure 3.800 is unconstitutional; (15) Florida law creates a presumption of death; (16) Florida law unconstitutionally instructs juries not to consider sympathy; and (17) electrocution is cruel and unusual punishment.
We find the following numbered challenges to section 921.141, which were preserved for review, to lack merit: (2),[11] (3),[12] (4),[13] (9),[14] (10),[15] and (12).[16] We find a number of the other challenges to be procedurally barred because they have not been properly preserved for appeal and, even if preserved, they have been rejected in Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993). These include challenges numbered (5), (6), (7), (8), (11), (13), (14), (15), and (17). We find challenge sixteen to be procedurally barred and, even if preserved, it has been directly rejected by the United States Supreme Court in Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).
Hunter's constitutional challenge aimed at the cold, calculated, and premeditated circumstance and the form it takes as a jury instruction, which he claims is "too vague to provide the constitutionally required guidance" is also without merit. We have previously rejected a claim that the cold, calculated, and premeditated aggravating factor is unconstitutionally vague and overbroad. See Klokoc v. State, 589 So.2d 219, 222 (Fla. 1991).
In Jackson v. State, 648 So.2d 85, 88 (Fla. 1994), this Court declared unconstitutionally vague a standard instruction on the cold, calculated, and premeditated factor that told the jury it could consider, if established by the evidence, that "the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without a[ny] pretense of moral or legal justification." In this case, the trial judge gave the following expanded instruction on cold, calculated, and premeditated:
The aggravating circumstances that you may consider are limited to any of the following and you may not consider any other aggravating circumstances.
....
Four, the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense or moral or legal justification.
....

*254 Simple premeditation of the type necessary to support a conviction for First Degree Murder is not sufficient to sustain a finding that this killing was committed in a cold, calculated or premeditated manner. What is required is a heightened form of premeditation which can be demonstrated by the manner of the killing. The premeditation of the Robbery cannot be transferred to the murder. Cold means totally without emotion or passion. Calculated means the defendant formed the decision to kill in sufficient time in advance of the killing to plan and contemplate.
We hold that this instruction was not "so vague as to leave the sentencer without sufficient guidance for determining the presence or absence of the factor." See Espinosa v. Florida, 505 U.S. 1079, ___, 112 S.Ct. 2926, 2928, 120 L.Ed.2d 854, 858 (1992).

Proportionality
As his final issue, Hunter argues that the death penalty is not proportionate here. In reviewing a death sentence, this Court must consider the particular circumstances of the case on review in comparison to other decisions we have made, and then decide if death is an appropriate penalty in comparison to those other decisions.
In the case at bar, the trial court found two statutory aggravating circumstances: prior violent felony conviction (there are a total of twelve prior violent felonies including the convictions in this case) and a capital felony committed during a robbery. The trial court found no statutory mitigating circumstances but found ten non-statutory mitigating factors: (1) fetal alcohol syndrome; (2) separation from siblings; (3) lack of motherly nurturing and bonding; (4) physical abuse; (5) emotional abuse and neglect; (6) unstable environment; (7) violent environment; (8) lack of positive role models; (9) death of adoptive mother; and (10) narcissistic personality disorder.
Hunter claims that this case is identical to Livingston v. State, 565 So.2d 1288, 1292 (Fla. 1988), where the Court found that the case did not warrant the death penalty because the mitigating circumstances outweighed the aggravating circumstances. In Livingston, the defendant entered a convenience store/gas station, fatally shot the female attendant, fired one shot at another woman inside the store, and carried off the cash register. Id. at 1289. The mitigating circumstances in Livingston included: (1) defendant's childhood was marked by severe beatings by his mother's boyfriend; (2) defendant's intellectual functioning was, at best, marginal; (3) defendant was only seventeen; and (4) defendant had used cocaine and marijuana extensively. Two statutory aggravators were found: (1) previous conviction of a violent felony; and (2) commission of murder during armed robbery.
We find no abuse of discretion by the trial court in concluding that the aggravating circumstances, especially the twelve prior violent felonies, which distinguish Livingston, outweigh the mitigating circumstances here. The twelve violent felonies include four prior felonies: (1) two convictions for aggravated battery; (2) shooting or throwing a deadly missile into an occupied vehicle; (3) attempted armed robbery; and eight contemporaneous felonies: (4) first-degree murder; (5) three convictions for attempted first-degree murder; (6) attempted armed robbery; (7) three convictions for armed robbery. We also find that the mitigating circumstances in Livingston, as set out above, were substantially stronger than those involved herein. The comparison of the two sets of mitigating circumstances explicitly reflects this distinction between the two cases. The underlying circumstances of the murders were also different. We conclude, based upon review of all of the evidence in this case as well as our case law, that death is not a disproportionate penalty here.

CONCLUSION
Having reviewed the entire record and finding no reversible error, we affirm the judgments and sentences.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] In addition to the eight contemporaneous convictions in this case, Hunter also has prior convictions for aggravated battery (2), shooting or throwing a deadly missile into an occupied vehicle, and attempted armed robbery.
[2] See § 921.141(5)(b), (d), Fla. Stat. (1993).
[3] For example, Ismael Lopez, who had ten hours of contact with Hunter, found that Hunter "was fine, stable, rational, no psychosis, no cognitive impairment."
[4] To rebut this argument, the State relies, in part, on Rivers v. State, 458 So.2d 762 (Fla. 1984). In Rivers, the trial judge, during voir dire, stated that she was not going to allow any more backstriking. Id. at 764. The effect of the judge's ruling was to require the lawyers to accept any prospective jurors not challenged at the first opportunity, which was in contravention of Florida Rule of Criminal Procedure 3.310. Id. However, because defense counsel did not subsequently attempt to backstrike any prospective juror after the judge made this statement, we held that the issue was not properly preserved for appeal. Id. Moreover, we stated that, even if this issue were preserved, noncompliance with Rule 3.310 was harmless error. Id.

Rivers was subsequently receded from in Gilliam v. State, 514 So.2d 1098 (Fla. 1987), insofar as it applied a harmless error analysis. In Gilliam, the defendant "sought to strike the panel as a whole, or as many jurors as he was allowed to peremptorily challenge, at the completion of the state's jury selection. The court refused, even though the panel had not yet been sworn, finding that he had waived his right to participate in jury selection." Id. at 1099 (emphasis added). Receding from the harmless error analysis employed in Rivers, we went on to hold that denial of this right is per se reversible error.
[5] For cases which have upheld a stop pursuant to a BOLO see Coney v. State, 341 So.2d 238 (Fla. 3d DCA 1976), State v. Chapel, 510 So.2d 1138 (Fla. 2d DCA 1987), and State v. Wise, 603 So.2d 61 (Fla. 2d DCA 1992).
[6] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[7] We also agree with the trial court that there are no undisclosed photographs depicting Hunter in full dress.
[8] Despite the fact that all of these photographs were disclosed at trial, Hunter makes no claim of a discovery violation. See Richardson v. State, 246 So.2d 771 (Fla. 1971). In fact, Hunter received the photos before the end of the State's case and makes no demonstration of prejudice.
[9] See State v. Schopp, 653 So.2d 1016 (Fla. 1995) (receding from per se reversal rule of Smith v. State, 500 So.2d 125 (Fla. 1986), and adopting a modified harmless error analysis, as set forth therein, to be applied to Richardson violations).
[10] In its sentencing order the trial court found that the cold, calculated, and premeditated aggravator was not proven beyond a reasonable doubt. The court found that the murder was cold and calculated, but that the heightened premeditation required by law did not exist.
[11] See Lowenfield v. Phelps, 484 U.S. 231, 241-44, 108 S.Ct. 546, 553-54, 98 L.Ed.2d 568, 579-81 (1988); Parker v. Dugger, 537 So.2d 969, 973 (Fla. 1988).
[12] See James v. State, 453 So.2d 786, 792 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984).
[13] See Hildwin v. State, 531 So.2d 124, 128 (Fla. 1988), aff'd, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989).
[14] See Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993).
[15] Id.
[16] Id.