# Supreme Court of Florida

_____

No. SC19-1727
_____

**CRAIG ALAN WALL, SR.,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

May 20, 2021

PER CURIAM.

Capital Collateral Regional Counsel (CCRC) appeals the circuit court's order granting Wall's motion to dismiss postconviction counsel and proceedings, filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm the circuit court's order granting Wall's waiver.

## FACTS AND PROCEDURAL BACKGROUND

Wall was sentenced to death for the 2010 murders of his infant son, C.J., and C.J.'s mother, Laura Taft. *See Wall v. State,*

238 So. 3d 127 (Fla. 2018). In 2015, Wall pleaded no contest to C.J.'s murder and guilty to Laura's murder. Wall conducted his own penalty phase and *Spencer* hearing with standby counsel present.[1] Wall was sentenced to death for both murders, and this Court affirmed his convictions and sentences. *See* 238 So. 3d at 146.

In March 2018, CCRC was appointed to represent Wall in postconviction proceedings. In July 2019, Wall filed a pro se motion to monitor and remove CCRC counsel Shepherd and, if denied, to waive postconviction counsel and proceedings. At a status hearing in August 2019, CCRC counsel Shepherd asked the postconviction court to appoint two experts to evaluate Wall's competency before holding a hearing on the motion. The court orally denied counsel's request and set a hearing on Wall's motion.

CCRC counsel then filed a written motion to determine Wall's competency, seeking the appointment of two experts to conduct an evaluation. The court denied the motion and conducted the hearing on Wall's motion on August 23, 2019.

---

1. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

At the motion hearing, the postconviction court initially addressed the first part of Wall's motion, which sought a *Nelson* hearing for the purpose of removing and replacing CCRC counsel Shepherd.[2]  However, the court denied Wall's request and instead conducted a *Durocher/Faretta* colloquy for the purpose of ruling on Wall's motion to waive postconviction counsel and proceedings.[3]

The court ultimately found that Wall's waiver of postconviction counsel and proceedings was knowing, intelligent, and voluntary, and it orally accepted Wall's waiver.  The court issued a written order to that effect on September 18, 2019.  CCRC now appeals the circuit court's order.

## ANALYSIS

CCRC argues that the circuit court abused its discretion by refusing to appoint experts to reevaluate Wall for competency before ruling on Wall's waiver, and that the court abused its discretion by finding that Wall was competent to waive postconviction counsel

---

2.  *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

3.  *Durocher v. Singletary*, 623 So. 2d 482 (Fla. 1993); *Faretta v. California*, 422 U.S. 806 (1975).

and proceedings. CCRC also argues that Wall's waiver was not knowing, intelligent, and voluntary. However, we conclude that the trial court did not abuse its discretion with respect to Wall's competency and that Wall's waiver was knowingly, intelligently, and voluntarily made.

## I. Competency

CCRC asserts that Wall's disruptive behavior, combined with an expert's conclusion that severe mental illness renders Wall incompetent, established a basis for ordering a new competency evaluation. The State correctly argues that the circuit court was not obligated to reevaluate Wall's competency. We begin by reviewing relevant background and then turn to our analysis.

During the pretrial phase, in May 2013, Dr. Jill Poorman evaluated Wall and deemed him incompetent to proceed. *Wall*, 238 So. 3d at 141. However, in December 2013, Dr. Poorman reevaluated Wall and concluded that he was competent to proceed. *Id.* The trial court accepted Dr. Poorman's conclusion. *Id.* Dr. Poorman also conducted subsequent evaluations of Wall— including an evaluation prior to Wall's pleas in 2015—each resulting in a conclusion that Wall was competent. *Id.* On direct

appeal, this Court rejected Wall's claim that he was not competent to plead. *Id.* at 141-42.

In 2019, in response to Wall's motion to waive postconviction counsel and proceedings, CCRC requested that the postconviction court appoint experts to evaluate Wall's competency. At an August 2, 2019, status hearing, CCRC stated that it had retained a mental health expert who reviewed Wall's records and determined that severe mental illness rendered Wall incompetent. CCRC urged the court to have Wall evaluated for competency before the waiver hearing. However, the judge concluded that there was no basis for a preliminary competency evaluation and that he would determine at the waiver hearing whether to order a competency evaluation. In an exchange with CCRC counsel Shepherd at the status hearing, Judge Federico stated:

> THE COURT: All right. Well, what you're telling me just reinforces what I've seen over the past nine years. If he is not happy with his lawyers or that the interaction with his lawyers, with you, is the same that it's been over the course of the nine years relative to representation, interaction without counsel, no matter how good his lawyers are or how experienced they are, it's never enough or never good enough in that situation.
> And so this is more of the same from what I can tell regarding that. Erratic behavior because he is angry or upset at the lawyers or people in general does not

necessarily lead to competency issues with Mr. Wall. He's a special case, as you've found out over the course of your representation.

And I also agree with what the AG said that he's not likely to assist in the evaluation. He wants to get here and vent his spleen and tell us what he wants to tell us. And I totally agree with what she said that he's not gonna cooperate until he actually has the opportunity to come and do that. If I think things have changed relative to his and [my] interaction, then I'll be able to figure that out fairly quickly, I believe.

Subsequently, at the waiver hearing on August 23, 2019, the postconviction court concluded that no competency evaluation was required. The exchange between the court and CCRC, with interjections from Wall, reads in relevant part:

MS. SHEPHERD [CCRC]: I just—I wanted to reiterate our position that if Mr. Wall—you decide he is making the decision to waive today, before you render a final decision allowing him to do that, that he be evaluated by two experts for competency.

THE COURT: It says if there's something about this hearing that suggests it's necessary to do that.

THE DEFENDANT: It says reasonable grounds.

MS. SHEPHERD [CCRC]: Yes, your Honor. You are correct. It is—the rule says if there's—

THE COURT: Nothing has changed over eight—

THE DEFENDANT: No.

THE COURT: —I would say eight years that Mr. Wall has been here.  The same affect, the same interaction, the same level of intelligence, the same ability to respond, to talk, to communicate.  While he can be vociferous in the way he speaks and a little profane—

THE DEFENDANT: That was a nice way to say it.

THE COURT: Thank you.  There is nothing that he is acting like today that isn't something that I've seen over the years throughout the—

THE DEFENDANT: It's based on frustration, your Honor.

THE COURT: Throughout the—I understand.  Throughout the—but, again, that shows that he's competent—

MS. SHEPHERD [CCRC]: Your Honor—

THE COURT: —because he understands what's going on.  He's oriented.  He knows what the process is.  He's done the research.  He's thought about it.  He's come here with a plan.  He's got an idea.  I mean, all of those things are the same that I've seen throughout.  He was able to waive—not only able to plead guilty, but he was able to waive having counsel to represent him and represent him in the penalty phase, which is even a higher standard than competence to go to trial if you have to represent yourself, and he was found to be competent.  The Florida Supreme Court upheld all those findings.

So unless there is something different—and, frankly, I haven't seen anything different.  This is more the same interaction that we've had over the last eight years throughout this entire process.  There is nothing here to suggest to me that I need to have him evaluated by experts.

MS. SHEPHERD [CCRC]: Your Honor, I would argue that simply because the fact that this is the same interaction that you've been having since the beginning would indicate that he is incompetent. It's our position he was never competent to go pro se and, likely, never competent to proceed. And he's manifestly shown that he has an inability to conduct himself according to courtroom etiquette, the profanity, interrupting, ranting about irrelevant—

THE DEFENDANT: I have a disregard for authority. That's all that amounts to.

MS. SHEPHERD [CCRC]: He's indicating—

THE DEFENDANT: That's not—that's not—

THE COURT: Hold on, Mr. Wall.

MS. SHEPHERD [CCRC]: Further, we do have a mental health expert that has opined preliminarily that he may have a mental illness that is preventing him from being competent. And under *Dusky* that can qualify. Your Honor, there is no harm to any of the parties—

THE DEFENDANT: Yeah, because you know I'm not going to cooperate. That's why you're trying to force it, because you know and he knows I'm not gonna do it.

THE COURT: Mr. Wall, please.

MS. SHEPHERD [CCRC]: There is no harm or prejudice to any of the parties having him evaluated just to ensure—this man is making the decision to waive his ability to challenge his death sentences. This is the ultimate decision anyone can make in a court of law. He deserves to be competent during that process.

THE DEFENDANT: I deserve counsel.

THE COURT: We agree he deserves—your argument is with the Supreme Court. They've reviewed everything that happened to this point. They said there was no error in any of those prior hearings and nothing has changed.

THE DEFENDANT: That was the argument on appeal too, your Honor, and they said nope.

THE COURT: Can I—can I finish? Okay. All right. So they said, you know, there was no error, that they upheld everything that was done, and there's nothing that's changed or nothing that I've seen. That's part of the reason that I had him here today, because I wanted to see with my own eyes and hear with my own ears to make sure that nothing had changed and that he was still competent and that I didn't need to do these things as far as appointing doctors before we went further and addressed the merits of what he had filed. So that's part of why I wanted him here, so I could have this discussion with him and to make sure that there weren't any issues and that nothing had changed and I needed to have him evaluated further.

As we've talked about, he's a bright enough fellow. He understands. He is capable of doing his own research. He's advocated for his own positions. That's not somebody that doesn't understand the process or understand the surroundings around him or understand what the possible consequences are. In fact, he's making an open-eyed decision. Whether you agree with it, whether you think it's the best decision or not, he's making decisions for himself and he has throughout this process.

So, I don't see anything that's changed or anything that requires me to take additional steps. I understand you're here to try and protect his interest regardless of how he feels about you personally, and I appreciate that, but I don't really need to—

THE DEFENDANT: I don't.

THE COURT: I know. But I don't feel any need to take any additional steps in that regard. But thank you for making the record in that regard. Okay?

Ensuring a defendant's competency is a continuing obligation of the court. *See Nowitzke v. State*, 572 So. 2d 1346, 1349 (Fla. 1990). "However, only if bona fide doubt is raised as to a defendant's mental capacity is the court required to conduct another competency proceeding." *Hunter v. State*, 660 So. 2d 244, 248 (Fla. 1995) (citing *Pericola v. State*, 499 So. 2d 864, 867 (Fla. 1st DCA 1986)). Moreover, "[a] presumption of competence attaches from a previous determination of competency to stand trial." *Id.* (citing *Durocher*, 623 So. 2d at 484 (Fla. 1993)).

A trial court's failure to hold a competency hearing is subject to the abuse of discretion standard. *Fowler v. State*, 255 So. 2d 513, 514 (Fla. 1971). Similarly, the court's determination of competency to waive postconviction counsel and proceedings is reviewed for an abuse of discretion. *Trease v. State*, 41 So. 3d 119, 124 (Fla. 2010) (citing *Alston v. State*, 894 So. 2d 46, 57 (Fla. 2004)). "[T]he relevant test for competency in the context of waiving collateral counsel and collateral proceedings in Florida is whether

- 10 -

the person seeking waiver has the capacity to 'understand[ ] the consequences of waiving collateral counsel and proceedings.' " *Slawson v. State*, 796 So. 2d 491, 502 (Fla. 2001) (alteration in original) (quoting *Durocher*, 623 So. 2d at 485)).

Based on our review of the record, there were no reasonable grounds for the circuit court—whose observations of Wall remained consistent over time—to order a new competency evaluation of Wall. The circuit court did not abuse its discretion by not ordering a competency evaluation of Wall, nor in concluding that Wall was competent to waive postconviction counsel and proceedings.

## II. Validity of Wall's Waiver

Having concluded that the circuit court did not err in finding that Wall was competent to waive postconviction counsel and proceedings, we now turn to the court's conclusion that Wall's waiver was knowingly, intelligently, and voluntarily entered. "This Court reviews a trial court's order finding a voluntary, knowing, and intelligent waiver of postconviction counsel and proceedings for an abuse of discretion." *Trease*, 41 So. 3d at 124 (citing *Alston*, 894 So. 2d at 57). The circuit court did not err in finding that Wall's waiver was knowing, intelligent, and voluntary.

- 11 -

Wall was advised that he was not entitled to a *Nelson* hearing for the purpose of removing CCRC postconviction counsel. Nonetheless, Wall stated under repeated questioning that he wanted to dismiss CCRC counsel and that he understood the implications of his waiver:

> THE COURT: All right. Well, I have to make sure that you understand it and that you understand if you're dismissing counsel and you're giving up all your post-conviction proceeding—
>
> THE DEFENDANT: And, I'm telling you to kill me faster. Yes, I understand.
>
> THE COURT: All right. Then you're gonna be warrant ready; you understand that?
>
> THE DEFENDANT: Yep.
>
> THE COURT: All the Governor has to do is sign a warrant and then you're—
>
> THE DEFENDANT: Oh, no, no, because you just skipped over—again, you're trying to fool her family. There is no governor sign a warrant. These people are gonna appeal whether I want it or not, just like I explained.

The colloquy later continued:

> MS. SHEPHERD [CCRC]: Also—yeah, I just want to make it clear he's not only forfeiting his state proceedings, he's forfeiting his federal proceedings as well. You know, a claim of ineffective assistance of post-conviction counsel is cognizable in certain circumstances, and he's going to

- 12 -

waive that opportunity. He's going to waive the federal courts considering anything. I also want—

THE COURT: Especially considering the fact that you really haven't even filed a claim yet. So he doesn't know what your claim would be.

THE DEFENDANT: Oh, I know. I know.

THE COURT: —the witnesses you'd call or how you would litigate that claim.

THE DEFENDANT: I know it's not mine.

THE COURT: So you're basically giving it up without even knowing—

THE DEFENDANT: I know it's not mine and I know what she's been telling me, and it's not—it's not worth a damn, trust me.

THE COURT: Their point is—

THE DEFENDANT: She's already ineffective.

THE COURT: —it would be smarter to wait to see what they file—

THE DEFENDANT: I'm not gonna wait and see and drag this crap out no more, man.

THE COURT: All right.

THE DEFENDANT: I'm done with it.

THE COURT: I get it.

MS. SHEPHERD [CCRC]: I also—I want to make sure that Mr. Wall understands that he's also waiving the

consideration of any future developments in the law that might apply retroactively to him. So there's been situations, for example, with *Hurst* relief where people would have been entitled to *Hurst* relief and not have a death sentence and they waived their proceedings. He needs to understand that—

THE COURT: Yeah, I probably should have said that too. She's making a good point, and I probably should have discussed that. Things may change. They may throw the statute out. They may change the statute—

THE DEFENDANT: Why do you think that I asked you to give me my plea agreement so when they do change something, I still get killed. Or if I don't get killed, I get my trial for my son. You robbed me of that. Don't sit here and try to pontificate to me about that rule. If you didn't do that, I wouldn't have to worry about that. You did that, presented that I didn't do what I did.

THE COURT: By waiving this claim now, you're giving up the right, if the law does change, to be able to challenge anything regarding that or to do anything if it does.

THE DEFENDANT: Well, hopefully my letters to the Governor after I'm death eligible will get him to do it quicker. Maybe a few letters, a couple pictures of my son and Laura will make him do it faster.

THE COURT: All right. It appears he understands that this is a waiver for all time and for all purposes, which—

THE DEFENDANT: That way I don't lose my ability to do it.

THE COURT: —I've tried to make clear to him. What else?

MS. SHEPHERD [CCRC]: Substantively, I think that's all, your Honor.  Of course, I'll reiterate our concern about competency just for the record and also our concern about this waiver being knowing, intelligent, and voluntary.  Once again, I don't know if it is considering how much he's hesitated throughout this process.  I don't feel any of the answers were unequivocal—

THE DEFENDANT: You see any hesitation, your Honor?  I ain't seen no hesitation.

THE COURT: Again, for the third time today, it's an uncomfortable position, but I find myself agreeing with Mr. Wall.  I don't see a lot of hesitancy about the proceedings he's taken.  He hasn't equivocated and he hasn't said that he doesn't want—

THE DEFENDANT: I wouldn't say anger.  It's frustration that I don't have any rights.

THE COURT: Okay.

THE DEFENDANT: That I'm being tied up.

THE COURT: But you're giving up—but the bottom line is you're giving up even more of your rights.  Because you're frustrated you don't have the rights you want, you're giving up mostly—pretty much all the rights you have left that I can summarize.

THE DEFENDANT: The only right I want is the right to get my sentence and to die by electrocution, which they're—that's the only right they're denying me right now.

THE COURT: All right.

THE DEFENDANT: They're denying me that. That's it. Oh, and they didn't put senior on my last name because—you said they would, but they said fuck—fuck Judge Federico.

THE COURT: Well, you're putting yourself in the position that—

THE DEFENDANT: That's the only two things that I wanted. I think I told you that from the beginning.

THE COURT: I know. But the appeal—

THE DEFENDANT: Two things, electrocution and putting senior on my ID card. You couldn't give me either one.

THE COURT: The appeal from this and the Governor's warrant is the only thing that's sitting between you now and the end, right? You understand that? Everything else is gone. The 3.851, removing counsel, coming back later, all of that is done, over.

THE DEFENDANT: Right.

THE COURT: They're fired.

THE DEFENDANT: Uh-huh.

THE COURT: And that hearing's over.

THE DEFENDANT: Uh-huh.

THE COURT: Right?

THE DEFENDANT: Oh, one thing about that, though, is she's incorrect. I can file—I should be able to file—a state habeas corpus has nothing to do with any of the crap that they're talking about. Once I file a state

habeas corpus, it goes to the feds.  Under federal rules, right, the feds are obligated to assign me federal postconviction counsel.  Once they do that, then them people can argue what they want, right?

THE COURT: You're done with the—

THE DEFENDANT: I'm done with the state—

THE COURT: You're done with me and you're done with the state court for purposes of challenging any—

THE DEFENDANT: Post-conviction 3.851 hearings, yes.

THE COURT: Correct.

After a discussion regarding federal postconviction proceedings, the

exchange continued:

THE COURT: 3.851(i), motion to dismiss counsel and post-conviction proceedings.  Based on everything we've discussed today, I've tried to go over everything with you.  She's added some things.  We've talked about it all.  Bottom line, final answer, you want counsel dismissed and the post-conviction proceedings dismissed.  Is that correct?

THE DEFENDANT: Deal or no deal.  You sure you want that briefcase, sir?  Yeah, I want the brief—I don't want the briefcase, but open it anyway.  Yes, I—I—this is what I want to do, sir.

THE COURT: Dismiss counsel and the post-conviction proceedings, yes?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Then I'll grant Mr. Wall's motion to dismiss counsel and the post-conviction proceedings. He understands the consequences. I've tried to go over them with him. We've tried to have—

THE DEFENDANT: The consequences is death, a quicker death, not a slow and dragged out—

THE COURT: I believe he understands the consequences. We've had a full discussion of it. The lawyers have been here to put on the record what they want. He's heard all of that. I think he's competent. He's made that decision, and he's indicated for the record his reasons for making that decision. So I'll grant it as his request. All right?

THE DEFENDANT: Thank you.

THE COURT: All right. Thank you.

The record conclusively establishes that Wall understood what he was waiving and the consequences of his waiver. The postconviction court did not err in concluding that Wall was competent to waive postconviction counsel and proceedings.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting Wall's motion to waive postconviction counsel and proceedings.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Pinellas County,
     Philip James Federico, Judge – 522010CF003759XXXXNO

Eric Pinkard, Capital Collateral Regional Counsel, Adrienne Joy Shepherd, Ali A. Shakoor, and Lisa Marie Bort, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida; and Craig Alan Wall, Sr., pro se, Raiford, Florida,

     for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, Florida,

     for Appellee