712 So.2d 818 (1998)
Richard MARTINEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 96-02500.
District Court of Appeal of Florida, Second District.
July 8, 1998.
*819 James C. Banks, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Richard Martinez appeals his convictions for first-degree murder and attempted firstdegree murder. We conclude that the trial court erred in its mid-trial determination that Martinez remained competent to proceed. Because we reverse on this ground, we need not address the remaining issues Martinez has raised.
Following Martinez's indictments on December 16, 1992, for first-degree murder and on December 30, 1992, for attempted firstdegree murder, the trial court found Martinez incompetent to stand trial, based on concurring written psychological evaluations by two experts, Drs. Sprehe and Gamache. On January 20, 1994, Martinez was committed to the Department of Health and Rehabilitative Services (HRS) to be placed in a mental health treatment facility.
On June 23, 1994, HRS reported to the trial court that Martinez was competent to proceed and returned him to Hillsborough County for further proceedings. Martinez was re-evaluated by Drs. Sprehe and Gamache, both of whom concluded that he was now competent. However, Dr. Sprehe indicated that "he still has somewhat questionable rational understanding of the proceedings," and Dr. Gamache recommended that the trial court "remain alert for any changes or decompensation in his condition under the stress of trial or due to a failure to continue to receive the recommended medication regimen."
On January 20, 1995, the trial court appointed Drs. Merin and Stein to examine Martinez to determine whether he remained competent for trial. Based on the reports of the four court-appointed experts, the trial court adjudged Martinez incompetent to stand trial and once again committed him to HRS on May 3, 1995. On November 6, 1995, HRS notified the trial court that Martinez was competent to stand trial and once again returned him to Hillsborough County for further proceedings.
In the early months of 1996 and pursuant to court order, Martinez was examined by Drs. Stein, Merin and Taylor. In their written reports, Dr. Stein was of the opinion that Martinez was "competent" to proceed; Dr. Merin was of the opinion that Martinez "continues to be incompetent" to stand trial; and Dr. Taylor was of the opinion that Martinez was "marginally competent" to proceed. After *820 conducting a competency hearing on April 23, 1996, at which the experts presented their written reports as well as live testimony, the trial court entered an order on April 29, 1996, finding Martinez competent to proceed.
We find no error in this pre-trial determination of competency, notwithstanding the conflict in the expert opinions, each of which considered all of the factors required by Florida Rule of Criminal Procedure 3.211. It is the trial court's function to resolve factual conflicts, and there was competent substantial evidence to support the trial court's determination. See Fowler v. State, 255 So.2d 513, 514 (Fla.1971); Green v. State, 598 So.2d 313, 313 (Fla. 2d DCA 1992). However, we do find error in the determination of competency which the trial court was called upon to make during the trial.
Martinez's trial began on May 13, 1996. On the second day of trial, just before opening arguments were presented to the jury, defense counsel alerted the trial court that "Mr. Martinez in my opinion may be slipping." After the jury was excused for the lunch recess, defense counsel told the trial court that Martinez "keeps telling me things that have nothing to do with the trial" and "I have under the circumstances a good faith basis to be concerned about whether or not he has decompensated again." At defense counsel's request, Martinez was re-evaluated by Dr. Taylor during the lunch recess the following day. Upon completion of his evaluation, Dr. Taylor reported, under oath, to the trial court:
My opinion is that he has decompensated and that his thought processes are somewhat less organized then they were when I saw him in February. He has begun to hallucinate more than the time that I saw him in February. He has not yet incorporated his delusions or hallucinations into any of the relevant things in the court process, so when I ask about the penalty and the various individuals in the court process he understands. It's my opinion that his primary limitation remains his capacity to testify relevantly, which was the main concern that I expressed in February. I feel that his capacity in that regard is even slightly less than it was back in February, and if he does take the stand he will require significant redirection or else he will have a tendency to become irrelevant and tangential while on the stand.
In response to questions by defense counsel, the following additional testimony was presented.
[DEFENSE COUNSEL]: Back when you examined him in February of 1996, Dr. Taylor, in your report at that time, as you essentially advised the Court, you found that he was marginally competent to proceed.
DR. TAYLOR: That's correct.
[DEFENSE COUNSEL]: Based upon your examination that you conducted just an hour ago is his competency to proceed at this point clearcut in your mind?
DR. TAYLOR: In my mind it is not clearcut. It remains marginal, even probably more marginal than it was at the time when I examined him in February.
[DEFENSE COUNSEL]: You said that heif he were to choose to testify he might have to be redirected rather using adjective rather forcefully [sic]?
DR. TAYLOR: Frequently.
[DEFENSE COUNSEL]: For example, if someone were to ask him about the events of December 7th, 1992 he would be likely to start talking about something that happened in Chicago in 1978?
DR. TAYLOR: Well, specifically when I began the interview earlier today I asked him to begin to focus, to tell me about the events on the date alleged, on December 7th, 1992, and his first statement was to go back to when he was admitted into a VA Hospital in Chicago back during the 1970's. I was able at that time to redirect him and remind him that I only wanted to hear about the events of that day, and with some digressions after that he was able to focus in, but he did require frequent redirection in that regard.
[DEFENSE COUNSEL]: Would you agree that his capacity to testify relevantly is impaired?
DR. TAYLOR: Yes, I would.

*821 [DEFENSE COUNSEL]: Is he capable in your opinion with any rational degree of understanding with assisting me in making decisions in the trial, for example, his decision whether or not to testify even?
DR. TAYLOR: In my opinion his capacity in that area is also impaired. I feel that it is minimally adequate in terms of compared to other defendants in terms of strategy prior to trial, but it is certainly less than the average defendant.
[DEFENSE COUNSEL]: Okay. How about the decision on how many mental health experts, for example, to call, is that something that he could assist me with given his present state of mind?
DR. TAYLOR: I would say that he has very little to add in terms of making decisions like that.
In response to the prosecutor's inquiry about what could be done to help Martinez not continue to decompensate, Dr. Taylor said that a higher dose of anti-psychotic medication might slightly improve his function. At the conclusion of Dr. Taylor's testimony, defense counsel discussed the difficulties he was having trying to consult with Martinez and told the trial court "he can't in my view give me any rational input...." The trial court responded: "I'll find him competent to continue to proceed at this time, however, ask that the jail reevaluate the medications and potentially increase the doses of that medication." The jury was returned to the courtroom and the trial proceeded.
The test for whether a defendant is competent to stand trial is "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings." See § 916.12(1), Fla. Stat. (1995); Fla. R.Crim. P. 3.211(a)(1). In making a competency determination, the trial court must consider all relevant evidence, including the reports of experts, and, absent an abuse of discretion, the trial court's determination will stand. Once a determination of competency is made by the trial court, a presumption of competency attaches. However, if bona fide doubt is raised as to a defendant's continued competence, the trial court is required to conduct another competency proceeding. See Hunter v. State, 660 So.2d 244 (Fla.1995).
In this case, the trial court properly recognized that it was required to conduct another competency proceeding based on defense counsel's bona fide doubts regarding his client's mental status. Nevertheless, we conclude that the evidence presented in that proceeding fails to support the trial court's decision that Martinez was competent to proceed.
In order for an expert's psychological evaluation to constitute evidence adequate to support a trial court's competency determination, it must include a discussion of each of the specific factors which rule 3.211(a) enumerates. See Livingston v. State, 415 So.2d 872 (Fla. 2d DCA 1982). These factors are the defendant's capacities to:
(i) appreciate the charges or allegations against the defendant;
(ii) appreciate the range and nature of possible penalties, if applicable, that may be imposed in the proceedings against the defendant;
(iii) understand the adversary nature of the legal process;
(iv) disclose to counsel facts pertinent to the proceedings at issue;
(v) manifest appropriate courtroom behavior;
(vi) testify relevantly....
Rule 3.211(a)(2)(A).
Although Dr. Taylor appears to have borne these factors in mind, our review of his testimony reveals that he did not specifically address each factor. Furthermore, his report to the trial court provides more support for a determination of incompetency than competency. An adequate evaluation at this juncture was particularly important, considering Martinez's history. The trial court had twice before found him incompetent to stand trial, in 1994 and 1995, and had based its pretrial finding of competency upon conflicting psychological evaluations. The trial court's reliance upon an incomplete evaluation of a single expert in this mid-trial determination was imprudent, especially when Dr. Taylor *822 stated that Martinez's competency to proceed was "not clear-cut."
Moreover, Florida Rule of Criminal Procedure 3.210(b) requires the trial court to appoint a minimum of two experts to examine a defendant for competency.[1] Although we previously recognized in Green v. State, 598 So.2d 313 (Fla. 2d DCA 1992), that the failure to appoint two experts for a competency proceeding is not fundamental error, the failure to do so, in this case, contributes to our conclusion that the evidence was not adequate to find Martinez competent.
We reverse Martinez's conviction and remand for a new trial contingent upon a determination that Martinez is competent to stand trial.
BLUE, A.C.J., and NORTHCUTT, J., concur.
NOTES
[1] Our review of the record reveals that Drs. Sprehe and Gamache were present and testified after Dr. Taylor's examination of Martinez during the lunch recess. Therefore, it appears the requirement to appoint at least two experts could have been met.